[Crim. No. 25631. Sept. 8, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL WOODHEAD, Defendant and Appellant.

[REDACTED]

**COUNSEL**

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, Linda Feldman and Michael Pescetta, Deputy State Public Defenders, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Martin S. Kaye, Thomas A. Brady and Laurence K. Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

KAUFMAN, J.—In this case we must decide whether a statute which prohibits commitment to the Youth Authority of any person convicted of a serious felony when he or she was 18 years of age or older at the time of the offense, applies to defendant, who was previously convicted of a serious felony committed when he was 18, but who stands convicted of a nonserious felony in the instant proceeding. For the reasons set forth below, we conclude it does not.

### FACTUAL AND PROCEDURAL BACKGROUND

In January 1985, defendant, aged 19, broke into a school in Livermore, was apprehended and charged with burglary. The information also alleged that defendant had been convicted previously of first degree burglary and had been placed on probation for that offense. The trial court informed defendant that upon a plea to second degree burglary, he would be referred to the Youth Authority for a maximum of three years or sentenced to state prison for two years if the Youth Authority rejected him. Defendant plead-

ed no contest to second degree burglary and admitted the prior conviction allegation.

The trial court found defendant guilty of second degree burglary. In accordance with the indicated disposition, the court committed defendant to the Youth Authority for a maximum period of three years. With respect to the prior conviction, the court agreed with defense counsel that it was "irrelevant for purposes of sentencing."

The Youth Authority rejected defendant, however, stating in a letter to the court that he was ineligible for commitment under Welfare and Institutions Code section 1732.5.[1] That section in pertinent part provides: ". . . (N)o person convicted of . . . any . . . serious felony, as defined in section 1192.7 of the Penal Code, committed when he or she was 18 years of age or older shall be committed to Youth Authority."[2] Section 1732.5 was one of several penal statutes enacted by the voters of this state when they adopted Proposition 8 in 1982.

Although defendant's current conviction of second degree burglary did not constitute a "serious" felony under Penal Code section 1192.7, the Youth Authority indicated that defendant was ineligible because he had been convicted previously of burglary of a residence, a serious felony under Penal Code section 1192.7, subdivision (c)(18), committed when he was 18 years of age. In the same letter to the court, the Youth Authority suggested the trial judge resentence defendant to state prison and order that he be "transferred" to the Youth Authority for "housing" pursuant to section 1731.5, subdivision (c).[3] The trial court thereupon sentenced defendant to

---

[1] Unless otherwise indicated, all statutory references are to the Welfare and Institutions Code.

[2] Section 1732.5 reads in full:

"Notwithstanding any other provision of law, no person convicted of murder, rape or any other serious felony, as defined in section 1192.7 of the Penal Code, committed when he or she was 18 years of age or older, shall be committed to Youth Authority.

"The provisions of this section shall not be amended by the Legislature except by statute passed in each house by rollcall vote entered in the journal, two-thirds of the membership concurring, or by a statute that becomes effective only when approved by the electors."

[3] Section 1731.5, subdivision (c) in pertinent part provides: "Any person under the age of 21 years who is not committed to the authority pursuant to this section may be transferred to the authority by the Director of Corrections with the approval of the Director of the Youth Authority. In sentencing a person under the age of 21 years, the court may order that the person shall be transferred to the custody of the Youth Authority pursuant to this subdivision. When the court makes such an order and the Youth Authority fails to accept custody of the person, the person shall be returned to court for resentencing. The transfer shall be solely for the purposes of housing the inmate and allowing participation in the programs available at the institution by the inmate, who, in all other aspects shall be deemed to be committed to the Department of Corrections and shall remain subject to the jurisdiction of the Director of Corrections and the Board of Prison Terms."

state prison for two years, ordered the prior conviction "stricken for purposes of sentencing only," and referred defendant to the Youth Authority for housing and program participation pursuant to section 1731.5, subdivision (c). The Youth Authority accepted the transfer.

On appeal, defendant claimed that section 1732.5 applies only to *current* convictions of serious felonies and, therefore, that the Youth Authority erroneously rejected his commitment on the basis of his prior serious felony conviction. The Court of Appeal rejected this contention on two grounds. The court held that the statutory language, "no person . . . convicted of any serious felony . . . ," is clear and unambiguous; the statute does not expressly distinguish between past and current serious felony convictions. Additionally, conceding that the language was ambiguous arguendo, the Court of Appeal found that the purpose of the statute was to separate nonserious from serious offenders and to provide more severe punishment for the latter; neither purpose would be served, the court impliedly concluded, by exempting from the statute young adult offenders with prior serious felony convictions.

We accepted review of the matter because construction of the statute presents an issue of first impression of statewide significance.[4] For the reasons set forth below, we conclude the interpretation announced by the Court of Appeal was incorrect.

## DISCUSSION

Our analysis starts from the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. (*People* v. *Overstreet* (1986) 42 Cal.3d 891, 895 [231 Cal.Rptr. 213, 726 P.2d 1288]; *People* ex rel. *Younger* v. *Superior Court* (1976) 16 Cal.3d 30, 40 [127 Cal.Rptr. 122, 544 P.2d 1322].) In determining intent, we look first to the words themselves. (*Overstreet, supra,* 42 Cal.3d at p. 895; *Younger, supra,* 16 Cal.3d at p. 40.) When the language is clear and unambiguous, there is no

---

[4] At oral argument, the People argued for the first time that the case should be dismissed as moot because defendant had served his state prison sentence. Defendant opposed the contention. A determination as to whether defendant was properly denied commitment to the Youth Authority will affect defendant's eligibility for an "honorable discharge" and release from "all penalties and disabilities resulting from the offense" pursuant to section 1772. (See fn. 6, *infra.*) Therefore, the matter is clearly not moot as to this defendant. Even if it were, however, the case presents an important issue of statutory construction which is certain to recur. (*Johnson* v. *Hamilton* (1975) 15 Cal.3d 461, 465 [125 Cal.Rptr. 129, 541 P.2d 881].) Moreover, a ruling on this matter is clearly necessary to correct a misinterpretation of the statute set forth in the published opinion of the Attorney General (67 Ops.Cal.Atty.Gen. 361 (1984)), upon which the Youth Authority relied in adopting its policy pertaining to eligibility under section 1732.5. We therefore decline to dismiss the matter as moot.

need for construction. (*Overstreet,* supra, 42 Cal.3d at p. 895; *People* v. *Belleci* (1979) 24 Cal.3d 879, 884 [157 Cal.Rptr. 503, 598 P.2d 473].) When the language is susceptible of more than one reasonable interpretation, however, we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part. (*People* v. *Shirokow* (1980) 26 Cal.3d 301, 306-307 [162 Cal.Rptr. 30, 605 P.2d 859]; *Morse* v. *Municipal Court* (1974) 13 Cal.3d 149, 156 [118 Cal.Rptr. 14, 529 P.2d 46]; *Pennisi* v. *Department of Fish & Game* (1979) 97 Cal.App.3d 268, 273 [158 Cal.Rptr. 683].)

 With respect to the words of the statute themselves, the operative phrase in section 1732.5, "no person convicted of," is obviously susceptible of two reasonable interpretations. The phrase may be narrowly interpreted, as defendant urges, to refer only to *current* convictions of serious felonies; it may also be more broadly construed, as the Attorney General argues, to include prior convictions as well as current convictions.

There is no merit to the Attorney General's contention that the language of the statute is clear and unambiguous, susceptible of only one reasonable interpretation—that "no person convicted" means *no* person *ever* convicted. It is true that the statute is not expressly limited to current offenses. Nor is it expressly applicable to prior offenses. As this court has recognized, the word "conviction" may have different meanings in different contexts, or even different meanings within a single statute. (*People* v. *Valentine* (1986) 42 Cal.3d 170, 177, fn. 2 [228 Cal.Rptr. 25, 720 P.2d 913]; See also *Helena Rubenstein Internat.* v. *Younger* (1977) 71 Cal.App.3d 406, 421 [139 Cal.Rptr. 473].) The word "convicted" conveys no self-evident meaning; its import must be gathered from the overall context in which it appears. (See *Pennisi* v. *Department of Fish & Game, supra*, 97 Cal.App.3d at p. 275 " '[A] word is merely a symbol which can be used to refer to different things. . . . It is impossible to determine the referent of the word without a knowledge of the facts involved in its use.' ") Indeed, as will appear below, the statutory scheme of which section 1732.5 is a part virtually compels the conclusion that "convicted," in the particular context of Proposition 8, refers exclusively to current convictions.

Because the words themselves provide no definitive answer, we must look to extrinsic sources. The interpretation of an ambiguous statutory phrase may be aided by reference to other statutes which apply to similar or analogous subjects. (See, e.g., *Overstreet* v. *North Shore Corp.* (1943) 318

U.S. 125, 131-132 [87 L.Ed. 656, 662-663, 63 S.Ct. 494].) Penal Code section 1203 et seq. concern various restrictions on the availability of probation, and in numerous instances begin with the phrase: " . . . , probation shall not be granted to . . . *any person convicted of* . . . ." (Italics added. See, e.g., Pen. Code, §§ 1203.065, 1203.07, 1203.073.) Of particular relevance here is Penal Code section 1203.06, which provides that persons who have personally used a firearm during the commission of certain serious felony offenses are ineligible for probation. Subdivision (a)(2) of Penal Code section 1203.06 defines the scope of the statute with respect to persons who have "previously" been convicted of offenses involving the use of a firearm, as follows: "(a) Probation shall not be granted to . . . any of the following persons: . . . (2) Any person *previously convicted* of a felony specified in subparagraphs (i) through (ix) of paragraph (1), who is *convicted* of a subsequent felony and who was personally armed with a firearm at any time during its commission or attempted commission or was unlawfully armed with a firearm at the time of his or her arrest for the subsequent felony." (Italics supplied.)

■ By expressly distinguishing within Penal Code section 1203.06 those persons who have been "previously convicted" of serious felonies from those who have been "convicted," the Legislature has made it clear that the word "convicted," standing alone in a statute, may be intended to refer to a *current* conviction.

The Attorney General objects to this line of reasoning, however, arguing that section 1732.5, unlike Penal Code section 1203.06, was enacted by the *voters,* who may have intended that the term "convicted" would enjoy a broader scope than that accorded it by the Legislature. Any suspicion that the voters intended a more expansive definition of the term than the Legislature is immediately refuted by reference to the text of Proposition 8 as whole. ■ A statute must be construed "in the context of the entire statutory system of which it is a part, in order to achieve harmony among the parts." (*People* v. *Shirakow, supra,* 26 Cal.3d at p. 307.)

One key provision of Proposition 8 added section 667 to the Penal Code. That section in pertinent part provides: ". . . [A]ny person *convicted of a serious felony who previously has been convicted of a serious felony* in this state or of any offense committed in another jurisdiction which includes all of the elements of any serious felony, shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately." (Italics supplied.) Significantly, Penal Code section 667 refers to persons

"convicted" of serious felonies in language almost identical to that contained in section 1732.5. Yet by separate, express reference it then immediately differentiates persons "who *previously* have been convicted of a serious felony." The inescapable implication is that the drafters of Proposition 8 intended the word "convicted" by itself to refer to persons *currently* convicted, for otherwise there would have been no point in differentiating and no need to refer to persons who have been "previously convicted of a serious felony."

■ It is a settled axiom of statutory construction that significance should be attributed to every word and phrase of a statute, and a construction making some words surplusage should be avoided. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) ■ It is an equally settled axiom that when the drafters of a statute have employed a term in one place and omitted it in another, it should not be inferred where it has been excluded. (*Ford Motor Co.* v. *County of Tulare* (1983) 145 Cal.App.3d 688, 691 [193 Cal.Rptr. 511].) Had the authors of Proposition 8 intended to include prior convictions within the scope of section 1732.5, it is fair to assume that they would have expressed that intention in terms as clear and unmistakable as they used in Penal Code section 667 enacted at the same time.

■ Viewing section 1732.5 in statutory context thus furnishes a rather clear and compelling indication that the authors intended the words "no person convicted of" in section 1732.5 to refer exclusively to *current* convictions. Indeed, in view of the language of Penal Code section 667 no other conclusion is reasonable.

While understandably opposed to this view, the Attorney General has adduced no persuasive argument to refute it. We are referred by the Attorney General to several claimed indicia allegedly supporting a more expansive construction of section 1732.5. None of *i*hem, however, sheds light on the issue that confronts us here. Thus, the Attorney General cites the following excerpt from the Legislative Analyst's discussion of section 1732.5 in the voters' pamphlet: *"Exclusion of Certain Persons From Sentencing to the Youth Authority.* Under current law, persons who commit certain sex offenses at the age of 18 years or older and some other youthful offenders are not sent to the Youth Authority. This measure would prohibit sending to the Youth Authority persons who were 18 years of age or older at the time they committed murder, rape, or other specified felonies. As a result, they would be sentenced to state prison or local jails, or receive probation." The quoted language, however, provides no more clue to the

intended scope of section 1732.5 than the words of section 1732.5 themselves. Similarly, the arguments of the proponents and the opponents of the initiative in the voters' pamphlet make no specific reference to the issue at hand.

In further support of a broad reading of the statute, the Attorney General relies on an excerpt from the preamble to Proposition 8 which states that the goals of criminal justice are to protect the "public safety" and to provide "deterrents" to crime. To further these general goals, the Attorney General submits that section 1732.5 was enacted to accomplish three specific purposes: to "segregate" from the Youth Authority all young adults who have been convicted of serious felonies; to prevent the "premature release" of repeat offenders from the Youth Authority; and to further the use of prior convictions without limitation for enhancement and impeachment purposes (Cal. Const., art. I, § 28, subd. (f)) by denying young adults with serious felony convictions the opportunity of an "honorable discharge" from the Youth Authority pursuant to section 1772. Each of these goals, the Attorney General contends, would be better served by a construction of section 1732.5 which denied Youth Authority eligibility on the basis of prior as well as current serious felony convictions.

We are not persuaded. While the preamble's references to "public safety" and criminal "deterrents" may reflect the public concerns that gave rise to Proposition 8, they provide no meaningful clues to the purposes underlying specific substantive sections of the initiative. The phrase "public safety" does not constitute a blank check for interpretation of specific statutory language in any manner that would appear to advance the policy objectives identified by the Attorney General. Section 1732.5 is a *penal* statute, and it is an established rule of construction that ambiguities in penal statutes are to be construed most favorably to the accused. (*Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420].) This rule applies to enactments by initiative as well as legislative enactments. (*People* v. *Weidert* (1985) 39 Cal.3d 836, 848 [218 Cal.Rptr. 57, 705 P.2d 380].) Thus, we conclude the preamble to Proposition 8 provides no persuasive evidence of the intended meaning of the specific language of section 1732.5.

Nor are we persuaded that a broad construction of section 1732.5 would necessarily accomplish the specific "public safety" goals which the Attorney General has advanced. As to the alleged goal of "segregating" young adults with prior serious felonies from other offenders committed to the Youth Authority, it is clear from defendant's own experience (having been trans-

ferred to the Youth Authority pursuant to § 1731.5) that even the construction argued for by the Attorney General would not necessarily accomplish that result. We must assume that the voters had in mind existing law when they enacted Proposition 8.[5] (*Bailey* v. *Superior Court* (1977) 19 Cal.3d 970, 977, fn. 10 [140 Cal.Rptr. 669, 568 P.2d 394].) Their failure to amend section 1731.5 indicates that physical segregation of serious offenders from other offenders committed to the Youth Authority was not the purpose behind section 1732.5.

As to the alleged goal of preventing the "premature release" from the Youth Authority of repeat offenders, it is noteworthy that section 1732.5 includes no provision whatsoever concerning the *length* of any state prison term to be imposed on serious felony offenders. Therefore, even if the trial court were precluded by section 1732.5 from sentencing a defendant to the Youth Authority for a nonserious felony on account of a prior serious felony conviction, longer incarceration would not necessarily result. The granting of probation would not be precluded, nor would there be any guarantee that the prison sentence imposed would exceed the Youth Authority commitment the court might otherwise have imposed. Indeed in the case at bench the alternative sentence was two years in state prison or three years in the Youth Authority. Thus, even broadly construed the statute does not guarantee longer periods of incarceration for those who have been convicted of serious felonies.

As to the third "public safety" objective, the Attorney General argues that a broad construction of section 1732.5 would exclude a greater number of young adult offenders from eligibility for an "honorable discharge" from the Youth Authority and the concomitant release "from all penalties and disabilities," pursuant to section 1772;[6] this, in turn, would subject a greater

---

[5] Prior to the adoption of Proposition 8, section 1731.5 gave the Director of the Department of Corrections the power with the consent of the Director of the Youth Authority to order that young adult offenders sentenced to state prison be housed at the Youth Authority. The statute was subsequently amended (Stats. 1983, ch. 701, § 1) to vest the trial court with similar authority.

[6] Section 1772 in pertinent part provides:
"Every person honorably discharged from control by the Youthful Offender Parole Board who has not, during the period of control by the authority been placed by the authority in a state prison shall thereafter be released from all penalties and disabilities resulting from the offense or crime for which he or she was committed, and every person discharged may petition the court which committed him or her, and the court may upon such petition set aside the verdict of guilty and dismiss the accusation or information against the petitioner who shall thereafter be released from all penalties and disabilities resulting from the offense or crime for which he or she was committed . . . ." It has been held that this section's release from "all penalties and disabilities" precludes the use of a prior conviction for purposes of impeachment. (*People* v. *Jackson* (1986) 177 Cal.App.3d 708, 712 [222 Cal.Rptr. 470].)

number of repeat offenders to subsequent impeachment or enhancement of sentence on the basis of their prior convictions pursuant to article I, section 28, subdivision (f) of the California Constitution.

This argument of the Attorney General is only partially correct. Under the terms of section 1732.5, it is clear that a young adult convicted of a serious felony may not be committed to the Youth Authority and none of the ameliorative consequences of a Youth Authority commitment, such as an honorable discharge pursuant to section 1772, could attach to that serious felony conviction. In the case at bench, for example, defendant was not eligible for a Youth Authority commitment when he was sentenced on his prior serious felony conviction, and therefore remained subject to whatever collateral disabilities might result from that conviction.

In any event, it does not necessarily follow that the voters intended the same result for *any* offense, however minor, committed by a young adult who has previously been convicted of a serious felony. Indeed we think it exceedingly doubtful that the voters intended such far-reaching and unlikely consequences when they adopted the relatively simple and straightforward text of section 1732.5. Had such consequences actually been intended, surely the language of the statute, or at least the ballot arguments in favor of Proposition 8, would have given some indication of that. Therefore, we conclude the so-called "public safety" objectives provide no persuasive rationale for the construction of section 1732.5 urged by the Attorney General.

The final extrinsic aid cited by the Attorney General consists of the letter from the Youth Authority to the trial court indicating its belief that defendant was ineligible for commitment under section 1732.5, as well as the Attorney General opinion on which the Youth Authority relied. ▮ Although contemporaneous administrative opinion or practice is entitled to "respect" (*Wenke* v. *Hitchcock* (1972) 6 Cal.3d 746, 752 [100 Cal.Rptr. 290, 493 P.2d 1154]), it is "not controlling as to the meaning of a constitutional provision or statute." (*Unger* v. *Superior Court* (1980) 102 Cal.App.3d 681, 688 [162 Cal.Rptr. 611].) A review of the Attorney General opinion in question reveals that its author merely assumed—without analysis—that section 1732.5 encompassed both current and prior convictions; the bulk of the opinion considered the ex post facto ramifications of that assumption. (67 Ops.Cal.Atty.Gen. 361, 368-369 (1984).) We do not find the cited Attorney General opinion persuasive on the question presented here. Because the Youth Authority's interpretation was clearly based on that opinion, it is equally unpersuasive.

Nor, finally, does *People* v. *Medler* (1986) 177 Cal.App.3d 927 [223 Cal.Rptr. 401], cited by the People for the first time at oral argument, provide any support for the construction of the statute urged by the Attorney General. In *Medler,* defendant was found guilty of aggravated assault and false imprisonment and was found to have used a firearm during the commission of both offenses. The trial court struck the enhancements for purposes of sentencing and sentenced defendant to two years in state prison. Under Penal Code section 1192.7, subdivision (c)(23), "any felony in which the defendant personally used a dangerous or deadly weapon . . ." is considered to be a serious felony. Defendant argued on appeal that by striking the enhancements, the court had somehow reduced the status of the offenses to nonserious felonies and thereby rendered defendant eligible for commitment to the Youth Authority. The *Medler* court flatly rejected the contention, holding that the trial judge "could not avoid the mandatory language of Welfare and Institutions Code section 1732.5 by striking the firearm use allegation for purposes of sentencing." (177 Cal.App.3d at p. 932.) Thus, *Medler* merely addressed the question of whether the defendant's *current* offense constituted a "serious" felony for purposes of Youth Authority eligibility under section 1732.5. *Medler* was not concerned in any way with the scope of section 1732.5 as it relates to a prior serious felony conviction, and consequently provides no support for the construction urged by the Attorney General.

■ The statutory context of Proposition 8 provides the only clear, direct and compelling evidence of the intended scope of section 1732.5. When read in conjunction with Penal Code section 667, the reference in section 1732.5 to persons "convicted" of serious felonies must be construed to refer exclusively to persons who currently stand convicted of serious felonies. It follows that section 1732.5 does not affect the trial court's sentencing discretion with respect to a young adult, such as the defendant here, who has previously been convicted of a serious felony but whose current conviction does not constitute such an offense.

In so concluding, we are mindful of our observation in *People* v. *Castro* (1985) 38 Cal.3d 301, 308 [211 Cal.Rptr. 719, 696 P.2d 111] that the drafters of Proposition 8 clearly "wanted a change and . . . the voters legislated it." Section 1732.5 reflects that desire by declaring that young adults currently convicted of serious felonies are not eligible for commitment to the Youth Authority. Our holding today leaves that fundamental change undisturbed.

## DISPOSITION

The Court of Appeal's judgment affirming the sentence is reversed with directions to remand the case to the trial court for resentencing consistent with the views set forth herein. In all other respects the judgment of the Court of Appeal is affirmed.

Lucas, C. J., Mosk, J., Broussard, J., Panelli, J., Arguelles, J., and Eagleson, J., concurred.