[No. B045761. Second Dist., Div. Five. Dec. 13, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
LATESHIA EVETTE BARTLETT, Defendant and Appellant.

COUNSEL

Kenneth M. Stern, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Edward T. Fogel, Jr., Assistant Attorney General, John R. Gorey and Richard B. Cullather, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BOREN, J.**—Lateshia Evette Bartlett was convicted by a jury of the sale or transportation of cocaine. (Health & Saf. Code, § 11352.) The jury found true the probation restriction allegation, as amended by the court, that appellant was "transporting and selling" a substance containing 28.5 grams or more of cocaine, within the meaning of Penal Code section 1203.073, subdivision (b)(1). On appeal, appellant contends that the Penal Code section 1203.073 finding restricting probation should be stricken and the matter remanded for resentencing because (1) the statutory restriction does not apply to "transporting" cocaine, and (2) there was no evidence of her "selling" cocaine. We agree.

FACTS

*Evidence at Trial*

El Segundo Police Officer Mark Freeman investigated activities at the Embassy Suites Hotel in El Segundo for evidence of narcotics transactions. Officer Freeman observed appellant and Robert Javande at the hotel on November 9 and 10, 1988. On November 10, appellant and Javande left their suite and went to the front desk where the hotel clerk presented to Javande a metal safe deposit box containing two large bundles of cash. Javande took the two bundles of cash and put them in appellant's purse, which he was holding.

Appellant and Javande then drove to the Tradewinds Hotel, a hotel considered notorious for narcotics trafficking. Approximately 45 minutes later, they left the hotel. Appellant drove evasively and erratically into downtown Los Angeles. She drove as if trying to ensure that no one would follow her and, in fact, Officer Freeman eventually lost sight of her car that day.

On the next day, November 11, 1988, Officer Freeman saw appellant and Javande leave the Embassy Suites Hotel. They carried their bags, and then checked out at the hotel desk. Officer Freeman and another officer followed appellant's car when she and Javande drove away. Soon thereafter, the officers stopped appellant's car for a traffic violation.

Officer Freeman approached the car and saw in the backseat a white plastic grocery bag. Inside the bag was a large rectangular container made of a heavy layer of cellophane wrapped with tape. Inside the cellophane container was a compressed white powder. On the outside of the container was a white round seal with large blue letters which spelled "Republica de Columbia." The package appeared to Officer Freeman to contain one kilogram of cocaine packaged in Columbia.

Appellant was arrested for transporting and possessing cocaine for sale. It was stipulated at trial that the cellophane package held 1,001.2 grams of a powder containing cocaine.

In defense, appellant claimed that she visited the Los Angeles area from Denver with Javande, her boyfriend of approximately six weeks. Javande took her to Los Angeles as a birthday present. She asserted that she had no intent to purchase cocaine, was ignorant of any narcotics transaction, and did not know why Javande directed her to the Tradewinds Hotel. Appellant denied driving evasively and claimed she was unfamiliar with her way and was being told where to drive by Javande.

*Jury Verdicts and Finding*

The jury found appellant not guilty of either possession for sale of cocaine (Health & Saf. Code, § 11351) or the lesser offense of possession of cocaine (Health & Saf. Code, § 11350, subd. (a)). However, the jury found appellant guilty of the charge in count I of the "sale or transportation" of cocaine. (Health & Saf. Code, § 11352.) Subsequently, when the jurors were polled, they were asked if they had found appellant "guilty of transportation" of cocaine, and they responded affirmatively.

As to the Penal Code section 1203.073 probation restriction allegation, the verdict forms given to the jury were phrased in terms of whether the charge was true of appellant "possessing for sale and selling" the requisite weight of a substance containing cocaine "within the meaning of Penal Code Section 1203.073(b)(1) contained in Count I of the information." During its deliberations, the jury inquired if it should "have been supplied with forms pertaining to *transportation* of over 28 1/2 grams" (italics in original) and asked if it could "change the charge from 'possessing' to

'transporting' in [the allegation attendant to] Count I as that is the jury's understanding of the charge in the jury's instructions." The court then changed the special verdict form for the probation restriction allegation, crossing out the words "possessing for sale" and inserting the word "transporting." The jury then found true the probation restriction allegation, as amended with the phrase "transporting and selling."

*Sentencing*

At sentencing, appellant's counsel noted that the finding restricting both probation and a suspended prison term did not mandate a prison term and that probation could be granted if "it is an unusual case." Appellant's counsel urged that probation or a suspended prison term was warranted because of the following factors: (1) the jury's verdict that appellant only transported cocaine indicated that she had no dominion or control over the cocaine; (2) appellant's companion, Javande, was "a significant drug dealer" who posted a large cash bail and then fled, but there was "no indication that [appellant] was actively involved in the drug trade"; (3) appellant had children in Colorado; and (4) she only had one prior offense, an offense considered "divertable."

The court declined to find any "unusual circumstances" within the meaning of the probation restriction finding. The court therefore rejected appellant's suggested sentence of one year in the county jail as a condition of probation. The probation officer recommended in his report the middle term in prison. However, the court found as a mitigating factor that appellant had "no prior record of any substance," found no aggravating factors, and imposed a prison sentence of the low term of three years.

## DISCUSSION

Appellant contends that the Penal Code section 1203.073 allegation restricting probation was improperly found true because the section does not apply to transporting cocaine. The contention is well taken.

The information charged appellant, in part, with the "sale or transportation" of cocaine. (Health & Saf. Code, § 11352.) The jury found her guilty of the "sale or transportation" of cocaine, as indicated in the verdict form. ▬ Nonetheless, appellant could only be properly convicted of the transportation, not the sale, of cocaine. The jury was instructed regarding the elements of the offense of the transportation of cocaine, but not the sale of cocaine. (CALJIC No. 12.02, as modified by the court; cf. *People* v. *Odle* (1988) 45 Cal.3d 386, 410-411 [247 Cal.Rptr. 137, 754 P.2d 184].) Most significantly, although the evidence at trial could be construed to infer that

appellant was involved in the purchase of cocaine, certainly to the extent of transporting cocaine, there was absolutely no evidence that she sold cocaine. The court apparently recognized that the conviction was limited to the transportation of cocaine, as indicated when the court polled the jurors to confirm that they had each found appellant "guilty of transportation" of cocaine. Accordingly, appellant's conviction must be properly viewed as limited only to the transportation of cocaine.

The question then is whether the Penal Code section 1203.073 allegation found true by the jury applies to the transportation of cocaine. Section 1203.073, by its terms, restricts the ability of the court to grant probation or to suspend execution or imposition of sentence, except in "an unusual case where the interests of justice would best be served," (Pen. Code, § 1203.073, subd. (a)) in cases where the defendant "is convicted of violating Section 11351 of the Health and Safety Code *by possessing for sale*, or Section 11352 of the Health and Safety Code *by selling*, 28.5 grams or more of cocaine . . . or a substance containing 28.5 grams or more of cocaine . . . or 57 grams or more of a substance containing cocaine . . . ." (Pen. Code, § 1203.073, subd. (b)(1), italics added.) The cocaine proscribed in subdivision (b)(1) is cocaine other than cocaine base. (Health & Saf. Code, § 11055, subd. (b)(6).) Penal Code section 1203.073, subdivision (b)(6), similarly restricts sentencing options, but does so in cases where a defendant "is convicted of violating Section 11352 of the Health and Safety Code by *transporting for sale*, importing for sale, or administering . . ." (italics added) the substance defined as "cocaine base" (Health & Saf. Code, § 11054, subd. (f)(1)).[1] The other subdivisions of Penal Code section 1203.073 also restrict sentencing options in a myriad of other different contexts involving controlled substances.[2]

We interpret Penal Code section 1203.073, subdivision (b)(1), the probation restriction allegation which the jury found true, in light of well-established principles of statutory construction. ■ The starting point for statutory construction is "the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. [Citations.]" (*People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1007 [239 Cal.Rptr. 656, 741 P.2d 154].) Penal Code sections must generally be construed

[1] The present case involved ordinary cocaine and not cocaine base, commonly referred to as "crack cocaine." (See *People* v. *Goldstein* (1990) 223 Cal.App.3d 465, 469 [272 Cal.Rptr. 881].)

[2] Subdivision (b)(2) of Penal Code section 1203.073 pertains to the possession for sale or sale of methamphetamine; subdivision (b)(3) pertains to the manufacture by chemical extraction or synthesis of various controlled substances; subdivision (b)(4) pertains to the involvement of minors in the manufacture or sale of heroin, cocaine base, cocaine or methamphetamine; subdivision (b)(5) pertains to the possession for sale of cocaine base; and subdivision (b)(7) pertains to the sale or offer to sell cocaine base.

" 'according to the fair import of their terms, with a view to effect [their] objects and to promote justice.' " (*In re Smith* (1966) 64 Cal.2d 437, 440 [50 Cal.Rptr. 460, 412 P.2d 804].) Consistent with that general principle, it is necessary to examine at the outset the language of the code section to determine if the words used unequivocally express the Legislature's intent. (*People v. Woodhead, supra,* 43 Cal.3d at p. 1007; *People v. Craft* (1986) 41 Cal.3d 554, 560 [224 Cal.Rptr. 626, 715 P.2d 585].) ■ "If no ambiguity, uncertainty, or doubt about the meaning of the statute appear, the provision is to be applied according to its terms without further judicial construction. (E.g., *People v. Baker* (1968) 69 Cal.2d 44, 50 [69 Cal.Rptr. 595, 442 P.2d 675], emphasizing that the plain meaning of words used is not to be disregarded.)" (*Morse v. Municipal Court* (1974) 13 Cal.3d 149, 156 [118 Cal.Rptr. 14, 529 P.2d 46].) However, when the language in the statute is unclear, ambiguous or susceptible of more than one reasonable interpretation, we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, and the statutory scheme of which the statute is a part. (*People v. Woodhead, supra,* 43 Cal.3d at p. 1008; *Sand v. Superior Court* (1983) 34 Cal.3d 567, 570 [194 Cal.Rptr. 480, 668 P.2d 787].)

Applying these principles of statutory construction to the provision at issue in the present case, "we find that the language of the code itself carries us a considerable distance." (*Morse v. Municipal Court, supra,* 13 Cal.3d at p. 156.) Penal Code section 1203.073, subdivision (b)(1), in pertinent part, restricts probation in cases where the defendant "is convicted of violating . . . Section 11352 of the Health and Safety Code by selling" minimum specified amounts of cocaine. Appellant contends quite simply and logically that "transporting" is not "selling," and that her conviction for transporting cocaine cannot support a probation restriction finding premised on selling cocaine.

However, another interpretation is also possible. The operative phrase in section 1203.073, subdivision (b)(1), could be viewed as that which specifies the particular statute, "Section 11352 of the Health and Safety Code." The term "by selling" could thus be deemed merely descriptive by example and not a restriction on the broad application of Health and Safety Code section 11352 which, by its terms, authorizes felony punishment for a defendant "who *transports,* imports into this state, sells, furnishes, administers, or gives away, or offers to transport, import into this state, sell, furnish, administer, or give away, or attempts to import into this state or transport" (italics added) various controlled substances including cocaine. Such an interpretation of Penal Code section 1203.073, subdivision (b)(1), is at odds with the arguably "ordinary and generally accepted meaning" (*People v. Castro* (1985) 38 Cal.3d 301, 310 [211 Cal.Rptr. 719, 696 P.2d 111]) of the

otherwise restrictive phrase "by selling." Nonetheless, viewing the phrase "by selling" as merely illustrative and not limiting creates doubt concerning the meaning of the statute.

For a more definitive meaning of the statute, we look first to relevant legislative history. Penal Code section 1203.073 originally started out as an effort by Senate Bill No. 902 (introduced Mar. 24, 1981) to amend Penal Code section 1203.07. Penal Code section 1203.07 (added by Stats. 1975, ch. 1087, § 6, p. 2651-2652) does not merely restrict to unusual circumstances granting probation or suspending sentence; it renders a person absolutely ineligible for probation or suspension of sentence if convicted of specified violations involving certain amounts of controlled substances. In the initial version of Senate Bill No. 902 of 1981, subdivision (a)(10) of the bill would have, in pertinent part, included among those ineligible for probation or suspension of sentence "[a]ny person who is convicted of violating Section 11352 of the Health and Safety Code by selling, *transporting*, importing into the state, furnishing, administering, or giving away . . . one-half ounce or more of a substance containing cocaine." (Italics added.)

The initial version of Senate Bill No. 902 was amended five times in the Senate and resulted in legislation which added section 1203.04 to the Penal Code. (Added by Stats. 1982, ch. 1283, § 1, p. 4752; prior § 1203.04 (Stats. 1970, ch. 333, § 2, p. 730) was unrelated to any probation or sentencing restrictions and was repealed Jan. 1, 1982, by its own terms.) Penal Code section 1203.04, subdivision (b)(1), as enacted in 1982, restricted but did not prohibit probation or the suspension of sentence for "[a]ny person who is convicted of violating Section 11351 of the Health and Safety Code by *possession for sale*" (italics added) of a specified amount of cocaine. Section 1203.04 did not address any restriction relative to the sale or transportation of cocaine.

Penal Code section 1203.04, subdivision (b)(1), was later amended as to the minimum weight of the cocaine involved (Stats. 1983, ch. 223, § 4, p. 692), and section 1203.04 was subsequently renumbered as section 1203.073 (Stats. 1984, ch. 144, § 162, p. 483). Penal Code section 1203.073 was thereafter amended several times to change the designation of the controlled substances and their weights and to include additional controlled substances and other circumstances involving restrictions on probation and the suspension of sentence. (Stats. 1985, ch. 323, § 2, p. 1417, ch. 1377, § 4, p. 4889, ch. 1381, § 2, pp. 4897-4898; Stats. 1986, ch. 1044, § 32, p. 3663; Stats. 1987, ch. 1174, § 10, p. 4162 [No. 4 Deerings Adv. Legis. Service, p. 4274].) One of the amendments in 1985 included for the first time a change in section 1203.073, subdivision (b)(1), which provided for a restriction on probation and the suspension of sentence not only for defendants convicted

of violating section 11351 of the Health and Safety Code by possessing for sale cocaine, but also for defendants convicted of violating "Section 11352 of the Health and Safety Code *by selling*" (italics added) cocaine. (Stats. 1985, ch. 1377, § 4, p. 4889.) The amendment in 1986 affected subdivision (b)(1) of the statute by changing the term "cocaine" to "cocaine hydrochloride." (Stats. 1986, ch. 1044, § 32, p. 3663.) The amendment in 1987 again used the term "cocaine" but referred to its definition in the Health and Safety Code. (Stats. 1987, ch. 1174, § 10, p. 4162 [No. 4 Deering's Adv. Legis Service, p. 4274].)

Several observations and conclusions may be derived from the legislative history of Penal Code section 1203.073, subdivision (b)(1). ■ In view of the Legislature's initial consideration but rejection in 1981 of the notion of "transporting" cocaine as among the activities within the scope of the statutory restriction, it is reasonable to conclude that it specifically intended to omit the transportation of cocaine from the purview of the statute. (See *City of Santa Cruz* v. *Municipal Court* (1989) 49 Cal.3d 74, 88-89, 92 [260 Cal.Rptr. 520, 776 P.2d 222].) The Legislature also on various occasions amended subdivision (b)(1) in other regards but did not seek to include the concept of "transporting" cocaine. From the Legislature's inaction in failing to include several times the concept of "transporting" when subdivision (b)(1) was amended in other respects, it is reasonable to infer a legislative "intent to leave the law as it stands in the aspects not amended." (*Cole* v. *Rush* (1955) 45 Cal.2d 345, 355 [289 P.2d 450, 54 A.L.R.2d 1137]; see *Estate of McDill* (1975) 14 Cal.3d 831, 837-839 [122 Cal.Rptr. 754, 537 P.2d 874].)

■ Moreover, it is a settled principle of statutory construction when determining legislative intent that every word and phrase in a statute should be deemed significant and not rendered surplusage. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) Consistent with this settled principle is the axiom that when the Legislature has used "a term in one place and omitted it in another, [the term] should not be inferred where it has been excluded. [Citation.]" (*People* v. *Woodhead, supra,* 43 Cal.3d at p. 1010.) ■ Had the Legislature intended to include "transporting" in Penal Code section 1203.073, subdivision (b)(1), it could have done so, as it did in subdivision (b)(6), which limits granting probation or suspending sentence when a defendant's conviction involves "transporting" for sale "cocaine base" (crack cocaine). Under such circumstances, the mention of "transporting" in subdivision (b)(6) and its omission in subdivision (b)(1) implies an intent to exclude. (See *Gilgert* v. *Stockton Port District* (1936) 7 Cal.2d 384, 387 [60 P.2d 847]; *People* v. *Harrell* (1989) 207 Cal.App.3d 1439, 1446 [255 Cal.Rptr. 750].)

■ Finally, when a penal statute is susceptible of two reasonable constructions, it must be construed "as favorably to the defendant as its language and the circumstances of its application may reasonably permit . . . ." (*Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420]; see *People* v. *Weidert* (1985) 39 Cal.3d 836, 848 [218 Cal.Rptr. 57, 705 P.2d 380].) "Strict construction of penal statutes protects the individual against arbitrary discretion by officials and judges and guards against judicial usurpation of the legislative function which would result from enforcement of penalties when the legislative branch did not clearly prescribe them." (*People* v. *Overstreet* (1986) 42 Cal.3d 891, 896 [231 Cal.Rptr. 213, 726 P.2d 1288].)

Accordingly, the Penal Code section 1203.073, subdivision (b)(1), allegation found true by the jury does not apply to transporting cocaine, the offense of which appellant was convicted. Subdivision (b)(1) applies only to the possession for sale of cocaine, of which appellant was acquitted, or to the sale of cocaine, of which there was no evidence implicating appellant. The court at sentencing therefore improperly failed to consider the options of probation or the suspension of execution or imposition of sentence. Upon remand for resentencing, the court shall consider, but is not obligated to impose, such other sentencing options.

### DISPOSITION

Appellant's conviction is modified to reflect only her transportation of cocaine (Health & Saf. Code, § 11352), the probation restriction finding (Pen. Code, § 1203.073, subd. (b)(1)) is stricken, and the matter is remanded for resentencing. In all other respects, the judgment is affirmed.

Lucas, P. J., and Ashby, J., concurred.