[No. F052116. Fifth Dist. Feb. 15, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
JULES GARCIA, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION†]**

---

†Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified
for publication with the exception of part II.

## COUNSEL

Michele A. Douglass, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Janis Shank McLean and Alice Su, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WISEMAN, J.**—In this case, the trial court required the self-represented defendant to serve subpoenas on his prisoner witnesses before they could be brought to court. Under our law, a witness incarcerated in state prison is brought to a criminal court to testify by means of a removal order issued pursuant to Penal Code section 2621 or 1567. The judge here would not issue removal orders for defendant's witnesses due to his mistaken belief that defendant was first required to have subpoenas served on his witnesses within the prison—a hurdle defendant never overcame.

The error, however, was not prejudicial. Under the circumstances of this case, the denial of access to the witnesses did not amount to a violation of defendant's constitutional right to present a defense. Only the state law standard of reversibility applies—the standard of *People v. Watson* (1956) 46 Cal.2d 818 [299 P.2d 243] (*Watson*)—and the error is harmless under that standard.

Defendant also claims the court's denial of his final request for a continuance was reversible error. The request was based partly on defendant's ongoing attempts to subpoena prisoner witnesses and partly on a claim that the prison had confiscated materials defendant had prepared to use in representing himself. In the unpublished portion of this opinion, we hold that any error in the denial of this request was also harmless. The judgment is affirmed.

## *FACTUAL AND PROCEDURAL HISTORIES*

Defendant Jules Garcia was a state prison inmate who used a wheelchair. A guard's search of the wheelchair yielded a sharpened piece of steel that had been hidden in some blankets. Shortly before this, according to defendant, he had been sleeping and the wheelchair was out of his possession. He was housed in an open dormitory and other inmates were able to take the wheelchair while he was sleeping. On this occasion, the wheelchair was not by his bed when he woke up and his caregiver, another inmate, had to go get it for him. Defendant told the guard he did not know how the weapon got in the wheelchair.

The district attorney filed an information charging defendant with one count of possessing a sharp instrument in prison. (Pen. Code, § 4502, subd. (a).)[1] The information also alleged that defendant had served four prior prison terms. (§ 667.5, subd. (b).)

Defendant represented himself. At pretrial appearances, he informed the court that he wished to call four witnesses at trial, all prisoners that he said saw the search of the wheelchair or the events preceding it. These witnesses included his caregiver and three inmates named Floy, Medford, and Lewis. He presented the court with removal orders and requested the court's signature. In addition, he offered to tell the court what he would prove through these witnesses.

The court asserted, at four different hearings, that defendant was required to serve subpoenas on these witnesses. On one of these occasions, the court stated that it would not sign the removal orders necessary to bring the witnesses from the prison to the court until subpoenas properly had been served. When, at this hearing, defendant attempted to explain that he was having difficulty getting the subpoenas served, the court responded by discussing the duty of self-represented litigants to understand the necessary procedures:

"THE COURT: That's your problem, Mr. Garcia, that's not the Court's problem. We're not here to practice law or do your work for you. [¶] . . . [¶]

"THE DEFENDANT: . . . I can't serve [subpoenas] because I'm the [defendant] in the matter . . . .

"THE COURT: You ever hear of a registered process server?

"THE DEFENDANT: No, sir.

---

[1] Subsequent statutory references are to the Penal Code unless otherwise noted.

"THE COURT: Well, you can serve them with a registered process server. The sheriff's office. [¶] . . . [¶] The Sheriff's office would also be available to serve them. [¶] . . . [¶] I have no—I have no involvement in your representation, I will not tell you how to proceed. . . . I will not give you suggestions. I will not give you advice. I have previously encouraged you to consult with counsel. Counsel would be made available to you, you've declined that. [¶] You've represented to the Court that you are competent to represent yourself. I have been obliged by law to accept that representation and permit you to act as your own attorney, and that is exactly what I will do. [¶] . . . [¶] No more, no less."

On the first day of the trial, defendant requested a continuance so he could keep trying to have subpoenas served on his witnesses inside the prison. He said his investigator had interviewed those witnesses and found they were willing to testify that other inmates had access to his wheelchair and that the wheelchair he was sitting in at the time of the search might not have belonged to him. Defendant also said he needed the continuance because he had prepared some materials for use at trial, but the prison had confiscated them. The court denied the request, again indicating that defendant would be held to the same standards as an attorney.

The trial went ahead without defendant's prisoner witnesses. His case consisted of his own testimony and a direct examination of a prison guard. He also cross-examined the prosecution's witnesses.

The jury found defendant guilty. The verdict form contained true findings regarding defendant's four prior offenses, but erroneously stated that these were strikes under the three strikes law. After defendant filed a motion for a new trial, the court modified the judgment to conform to proof, deleting the references to the three strikes law and replacing them with references to the statute on enhancements for prior prison terms. The new trial motion was then denied. The court imposed a sentence of seven years, consisting of the three-year middle term for the offense, plus enhancements of one year for each of the prior prison terms.

### *DISCUSSION*

I. *Witnesses*

■ Section 2621 describes the procedure for securing the attendance of a prisoner as a witness at a criminal trial, as follows:

"When the testimony of a material witness is required in a criminal action, before any court in this state, or in an examination before a grand jury or

magistrate in a felony case and such witness is a prisoner in a state prison, an order for the prisoner's temporary removal from such prison, and for the prisoner's production before such court, grand jury or magistrate, may be made by the superior court of the county in which such action or examination is pending or by a judge thereof; but in case the prison is out of the county in which the application is made, such order shall be made only upon the affidavit of the district attorney or of the defendant or the defendant's counsel, showing that the testimony is material and necessary; and even then the granting of the order shall be in the discretion of said superior court or a judge thereof. The order shall be executed by the sheriff of the county in which it is made, whose duty it shall be to bring the prisoner before the proper court, grand jury or magistrate, to safely keep the prisoner, and when the prisoner is no longer required as a witness, to return the prisoner to the prison whence the prisoner was taken . . . . Such orders shall recite the purposes for which said person is to be brought before the court, grand jury or magistrate, and shall be signed by the magistrate or judge making the order, and sealed with the seal of the court, if any.

"Such order must be to the following effect:

"County of _____ (as the case may be).

"The people of the State of California to the warden of _____:

"An order having been made this day by me, that A.B. be produced in this court as witness in the case of _____, you are commanded to deliver the prisoner into the custody of _____ for the purpose of (recite purposes).

"Dated this _____ day of _____, 19__."

Section 2621 overlaps with section 1567, which states:

"When it is necessary to have a person imprisoned in the state prison brought before any court, or a person imprisoned in a county jail brought before a court sitting in another county, an order for that purpose may be made by the court and executed by the sheriff of the county where it is made. The order shall be signed by the judge or magistrate and sealed with the seal of the court, if any. The order shall be to the following effect:

"County of _____ (as the case may be).

"The people of the State of California to the warden of _____ (or sheriff of _____, as the case may be):

"An order having been made this day by me, that A.B. be produced in this court as witness in the case of _____, you are commanded to deliver him or her into the custody of _____.

"Dated this _____ day of _____, 19__."

Criminal subpoenas are authorized by section 1326. Section 1326, subdivision (a), provides that "[t]he process by which the attendance of a witness before a court or magistrate is required is a subpoena." Section 1327 sets forth the form of a criminal subpoena:

"The people of the State of California to A.B.:

"You are commanded to appear before C.D., a judge of the _____ Court of _____ County, at (naming the place), on (stating the day and hour), as a witness in a criminal action prosecuted by the people of the State of California against E.F.

"Given under my hand this _____ day of ____, A.D. 19___. G.H., Judge of the _____ Court (or 'J.K., District Attorney,' or 'J.K., District Attorney Investigator,' or 'D.E., Public Defender,' or 'D.E., Public Defender Investigator,' or 'F.G., Defense Counsel,' or 'By order of the court, L.M., Clerk,' or as the case may be)."

Section 1328 provides for the manner of serving a subpoena, stating that it may be served by any person except the defendant and that a peace officer shall serve in his or her county any subpoena delivered to him or her for service. A subpoena must be served personally on the witness. (§ 1328, subd. (a).)

The trial court in this case evidently regarded service of a subpoena on the prisoner as a prerequisite to its issuance to the warden of an order to remove the prisoner. In their brief, the People similarly argue that "[t]he requirements of section [2621] must be read in conjunction with section 1326. A removal order can only be made when a subpoena has been served." As we will explain, this view is not supported by authority or sound statutory construction.

The People have cited no authority supporting their view, and our research has disclosed none. Sections 1326, 1327, and 1328 were originally enacted in 1872. (51 West's Ann. Pen. Code (2004 ed.) §§ 1326, 1327, 1328, pp. 566, 573, 576.) Section 1567 was also originally enacted in 1872, and section 2621 was originally enacted in 1941. (51B West's Ann. Pen. Code (2000 ed.) §§ 1567, 2621, pp. 57, 175.) In the time between the enactment of these statutes and the present, it has never been held that a criminal court cannot

order a prison warden to produce a prisoner as a witness pursuant to section 2621 or 1567 unless a party has first had a subpoena served on the witness pursuant to section 1328.[2]

■　The words of the statutes do not support the People's construction. In interpreting a statute, our objective is "to ascertain and effectuate legislative intent." (*People v. Woodhead* (1987) 43 Cal.3d 1002, 1007 [239 Cal.Rptr. 656, 741 P.2d 154].) To the extent the language in the statute may be unclear, we look to legislative history and the statutory scheme of which the statute is a part. (*People v. Bartlett* (1990) 226 Cal.App.3d 244, 250 [276 Cal.Rptr. 460].) We consider the entire statutory scheme in interpreting particular provisions "so that the whole may be harmonized and retain effectiveness." (*Clean Air Constituency v. California State Air Resources Bd.* (1974) 11 Cal.3d 801, 814 [114 Cal.Rptr. 577, 523 P.2d 617].) "In the end, we ' "must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]' " (*Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1003 [111 Cal.Rptr.2d 564, 30 P.3d 57].)

Nothing in section 2621 or 1567 states or implies that a party must serve a subpoena on an incarcerated witness before a judge may issue an order to bring the witness to court. Section 1326, subdivision (a) does state, without express limitation to nonincarcerated witnesses, that a subpoena is "[t]he process by which the attendance of a witness before a court or magistrate is required" (italics added), but even this cannot mean that a court lacks power to direct a warden to produce a prisoner witness unless the witness is first personally served with a subpoena. An order issued in the form required by section 1567 or 2621 commands the warden to produce the prisoner witness by delivering him or her into the custody of the sheriff. It would be redundant for the prisoner at the same time to be "commanded to appear" by a section 1327 subpoena. After the removal order is issued, the prisoner has no power not to appear, even if not subpoenaed, since he or she has no right not to be taken to court by the sheriff.

---

[2] In one case, the California Supreme Court used the word "subpoena" as a shorthand reference to a removal order issued pursuant to section 2621; using the word in this sense, it upheld the trial court's decision to "deny a subpoena for a witness who is a prisoner . . . ." (*People v. Smith* (1985) 38 Cal.3d 945, 960 [216 Cal.Rptr. 98, 702 P.2d 180].)

In this case, by contrast, the court demanded that defendant serve genuine subpoenas. A removal order is an order to the prison warden to produce the prisoner. A subpoena is an order to a witness to appear. Here the court told defendant he had to have the sheriff or a process server serve subpoenas *on his witnesses*. It refused to sign removal orders unless this was done. As a result, the court was not referring to removal orders when it told defendant he had to serve subpoenas.

The adoption of the People's interpretation of the statutes would result in illogical consequences. Compliance with section 1328 requires a peace officer or other person to serve a subpoena on a witness personally. In the case of prisoner witnesses, who can appear only after a removal order is issued to the warden and executed by the sheriff, personal service on the witness would result in unnecessary bureaucratic activity and additional costs and delays which serve no purpose.

■ For these reasons, we conclude that service of a subpoena pursuant to section 1328 is not required before a court can issue a removal order pursuant to section 2621 or 1567. Further, since the subpoena would serve no purpose under these circumstances, the court does not have discretion to order a party to serve one as a condition of its issuance of a removal order.

■ The People argue that, even if the court's subpoena demand was erroneous, defendant was still not entitled to have his witnesses ordered to court because he did not submit an affidavit showing that their testimony was material and necessary. We disagree. Section 2621 appears to call for an affidavit of this kind only "in case the prison is out of the county in which the application is made." Defendant and his witnesses were incarcerated in the California Substance Abuse Treatment Facility in Corcoran. Corcoran is in Kings County, where this case was tried. Further, during one hearing in which a continuance was requested, defendant offered to tell the court orally what his witnesses would testify about, but the court declined to listen:

"THE COURT: All right. What is the People's position with regard to a continuance? Apparently Mr. Garcia's witnesses are not under subpoena at this juncture.

"THE DEFENDANT: If the People like me to submit information how good or what the witnesses will be here for or why I need the witnesses.

"THE COURT: Let's see first what their position is."

The prosecution opposed the request for a continuance. The court granted it to allow defendant to continue trying to serve subpoenas, among other things; it warned that this would be the last continuance. It never returned to the matter of what defendant's witnesses' testimony would be about. Apparently, the court did not yet wish to consider what these witnesses would say—and whether their testimony would be "material and necessary" (§ 2621)—because it did not intend to determine whether to issue removal orders until subpoenas had been served on the witnesses, as it had indicated in a prior hearing.

In any event, we conclude the error was harmless. Defendant argues that his right to due process of law under the federal Constitution was violated by

depriving him of "a meaningful opportunity to present a complete defense." (*California v. Trombetta* (1984) 467 U.S. 479, 485 [81 L.Ed.2d 413, 104 S.Ct. 2528].) Consequently, he contends, the error either is reversible per se or is reversible unless harmless beyond a reasonable doubt, the standard set forth in *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824]. We disagree.

■ Where a trial court's erroneous ruling is not a refusal to allow a defendant to present a defense, but only rejects certain evidence concerning the defense, the error is nonconstitutional and is analyzed for prejudice under *Watson, supra*, 46 Cal.2d 818—i.e., the judgment should be reversed only if it is reasonably probable that the defendant would have obtained a more favorable result absent the error. (*People v. Bradford* (1997) 15 Cal.4th 1229, 1325 [65 Cal.Rptr.2d 145, 939 P.2d 259].) A similar rule was applied in *People v. Cudjo* (1993) 6 Cal.4th 585 [25 Cal.Rptr.2d 390, 863 P.2d 635]. There, the trial court erroneously excluded the testimony of a proffered defense witness—who confessed to the crime in a hearing outside the jury's presence—on the ground that the confession was not credible. (*Id.* at pp. 604–606.) The Supreme Court held that this error was not a constitutional one and, therefore, the *Watson* standard for prejudice applied. (*People v. Cudjo, supra*, at pp. 610–611.) Under that standard, the error was harmless in light of the powerful evidence of the defendant's guilt. (*Id.* at pp. 612–614.)

In this case, the trial court's erroneous demand that defendant serve subpoenas on his prisoner witnesses was not a refusal to allow defendant to present his defense; it precluded the presentation of only certain evidence supporting the defense. Defendant was able to present his defense without those witnesses.

The substance of defendant's defense was that, because he was housed in an open dormitory, other people had access to his wheelchair while he was sleeping a short time before the search that uncovered the weapon and that this provided an alternative explanation for the presence of the weapon in the chair. He testified about this himself: "At the time I realized my wheelchair was not there. My caregiver was contacted, he came and went and obtained the wheelchair from out in the foot—well, it was football Sunday, September 18th if I remember, so they were watching football. Other inmates use disabled [inmates'] wheelchairs to sit in, to play games in, and there's no way that I can personally secure the wheelchair or prevent it. For one, if I'm awake I can probably, 'No way,' but then that's a challenge. But, if I'm asleep and I'm in an open dorm cell another prisoner can come utilize my wheelchair. I have no idea that other prisoners are possibly using the wheelchair for criminal conduct, I can't say that. What I'm saying is that the wheelchair was out of my presence, my caregiver went and obtained it." Defendant reiterated some of these points in his closing argument.

Most importantly, the prison guard who discovered the weapon affirmed the key facts regarding this defense under questioning by the People and by defendant. The guard testified that defendant was housed in an open dormitory; that defendant's caregiver had access to the wheelchair when defendant was not using it; that there were more than 280 other inmates in the dormitory and that they were able to take the wheelchair without defendant's permission; and that, although defendant was sitting in the wheelchair when the search commenced, it was never identified as his wheelchair. Since all this evidence was presented to the jury, we cannot say defendant was deprived of the right to present his defense. As a result, the *Watson* standard for harmless-error review applies.

Under the *Watson* standard, the trial court's error was harmless since defendant's defense was fully explored before the jury. The prosecution's main witness essentially agreed with defendant's factual premise regarding the handling of his wheelchair. In spite of this, the jury rejected defendant's claim that he had no knowledge of the weapon and found him guilty. It is not reasonably probable that the jury would have reached a different conclusion had it heard defendant's prisoner witnesses describe the same facts.

Defendant argues that the prisoner witnesses' testimony was important because it would have corroborated his own, which the jury was likely to have found self-serving and lacking in credibility. The fact that the prison guard corroborated defendant's testimony on the key points undermines this contention, however.

In his reply brief, defendant adds that "[t]he aide who brought [defendant] his wheelchair would also be able to offer testimony [defendant] could not, such as where and from whom he retrieved the wheelchair, and whether he saw any of them tampering with the blankets in which the sharp instrument was found. He could also offer testimony [defendant] could not credibly give in his own behalf: whether he saw [defendant] tampering with the blankets before or after he sat down on them." The suggestion here seems to be that this witness might have testified that he saw another prisoner concealing something in the wheelchair and did not see defendant concealing anything. This argument is speculative. We can find no indication in the record that defendant believed there was evidence directly exculpating him and incriminating another. We cannot say a more favorable verdict is reasonably probable based on a guess, first raised in an appellate brief, that a witness would have given this kind of testimony.

II. *Continuance**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 124.

## *DISPOSITION*

The judgment is affirmed.

Harris, Acting P. J., and Kane, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 14, 2008, S161413.