TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 91-504 |
| of | : | |
| | : | FEBRUARY 26, 1992 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE BILL JONES, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following question:

With respect to surplus campaign funds held by a statewide ballot measure committee after an election, may the committee (1) return the funds to contributors on a pro rata basis; (2) return the funds only to contributors of a specified minimum amount; (3) donate the funds to a nonprofit organization or a nonprofit, tax-exempt corporation; (4) contribute the funds to another ballot measure committee, to a candidate committee, or to a political party; (5) use the funds for educational or lobbying efforts with respect to the subject of the ballot measure, if the committee is established for purposes in addition to supporting the ballot measure; or (6) retain the funds for use in a future ballot measure campaign on the same or related subjects?

CONCLUSION

With respect to surplus campaign funds held by a statewide ballot measure committee after an election, the committee may (1) return the funds to contributors on a pro rata basis; (2) return the funds only to contributors of a specified minimum amount; (3) donate the funds to a nonprofit organization or a nonprofit, tax-exempt corporation; (4) contribute the funds to another ballot measure committee, to a candidate committee, or to a political party; (5) use the funds for educational or lobbying efforts with respect to the subject of the ballot measure, if the committee is established for purposes in addition to supporting the ballot measure; or (6) retain the funds for use in a future ballot measure campaign on the same or related subjects.

ANALYSIS

The question presented for resolution concerns the disposition of surplus campaign funds held by a statewide ballot measure committee after an election has taken place. To what extent does California law place restrictions upon the use of surplus funds in the possession of such

1.                                                                91-504

a committee?  We conclude that the committee may generally distribute the funds so long as committee members are not personally benefitted.

Government Code section 89519[1] is the only statute in California expressly dealing with the disposition of surplus campaign funds after an election.  It states:

"Upon leaving any elected office, or at the end of the postelection reporting period following the defeat of a candidate for elective office, whichever occurs last, campaign funds raised after January 1, 1989, under the control of the former candidate or elected officer shall be considered surplus campaign funds and shall be disclosed pursuant to Chapter 4 (commencing with Section 84100) and shall be used only for the following purposes:

"(a)    The payment of outstanding campaign debts or elected officer's expenses.

"(b)    The pro rate repayment of contributions.

"(c)    Donations to any bona fide charitable, educational, civic, religious, or similar tax-exempt, nonprofit organization, where no substantial part of the proceeds will have a material financial effect on the former candidate or elected officer, any member of his or her immediate family, or his or her campaign treasurer.

"(d)    Contributions to a political party or committee so long as the funds are not used to make contributions in support of or opposition to a candidate for elective office.

"(e)    Contributions to support or oppose any candidate for federal office, any candidate for elective office in a state other than California, or any ballot measure.

"(f)    The payment for professional services reasonably required by the committee to assist in the performance of its administrative functions, including payment for attorney's fees or litigation which arises directly out of a candidate's or elected officer's activities, duties, or status as a candidate or elected officer, including, but not limited to, an action to enjoin defamation, defense of an action brought of a violation of state or local campaign disclosure, or election laws, and an action arising from an election contest or recount."

Section 89519 is part of a statutory scheme (§§ 89510-89522), sometimes known as the Personal Use Law, that places certain restrictions upon the use of campaign funds held by, among others, a ballot measure committee.  (See § 89511, subd. (a).)  For example, it requires that "[e]xpenditures which confer a substantial personal benefit shall be directly related to a political, legislative, or governmental purpose" (§ 89512) and "[c]ampaign funds shall not be used to make personal gifts unless the gift is directly related to a political, legislative, or governmental purpose" (§ 89513, subd. (f)(1)).

The Personal Use Law allows the use of campaign funds for "donations or loans to bona fide charitable, educational, civic, religious, or similar tax-exempt, nonprofit organizations,

_____

[1]All section references are to the Government Code unless otherwise specified.

when no substantial part of the proceeds will have a material financial effect on the candidate, elected officer, member of his or her immediate family, or the campaign treasurer, and where the donation or loan bears a reasonable relation to a political, legislative, or governmental purpose." (§ 89515.)

However, section 89519 is the only provision of the Personal Use Law dealing with surplus campaign funds remaining after an election, and it is expressly limited to "campaign funds raised after January 1, 1989, under the control of [a] former candidate or elected officer." The Legislature has omitted from this statutory provision any reference to ballot measure committees. Because the Legislature has referred to committees in other provisions of the Personal Use Law (§§ 89513, 89516, 89517) but only to a "former candidate or elected officer" in section 89519, we apply the rule of construction that "when the drafters of a statute have employed a term in one place and omitted it in another, it should not be inferred where it has been excluded." (*People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1010.) Hence, we conclude that the Personal Use Law does not apply to surplus campaign funds held by a ballot measure committee.[2]

We next turn to Elections Code section 29795,[3] which specifically governs campaign funds held by a ballot measure committee. It states:

"Every person who is entrusted with money or things of value, for the purpose of promoting or defeating any initiative, referendum, or recall petition or any measure which has qualified for the ballot is a trustee of the money or things of value. If a person wrongfully appropriates the money or things of value to any use or purpose not in the due and lawful execution of the trust, the person shall be punishable by a fine not exceeding five thousand dollars ($5,000), or by imprisonment in the state prison for 16 months or two or three years or in a county jail not exceeding one year, or by both such fine and imprisonment. The following expenses are within the due and lawful execution of the trust:

"(a)     Securing signatures to initiative, referendum, or recall petitions.

"(b)     Circulating initiative, referendum, or recall petitions.

"(c)     Holding and conducting public meetings.

"(d)     Printing and circulating prior to an election:

"(1)     Specimen ballots.

"(2)     Handbills.

---

[2]The Personal Use Law is administered by the Fair Political Practices Commission, which advises persons as to its applicability. (See §§ 83122, 83114.) The commission has concluded that section 89519 (previously numbered 85807) is inapplicable to ballot measure committees. (*Hiltachk* Advice Letter, No. I-90-053 (Aug. 14, 1990).) "The contemporaneous construction of a new enactment by the administrative agency charged with its enforcement, although not controlling, is entitled to great weight." (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1388.)

[3]Even if section 89519 were to apply to ballot measure committees, we would still need to examine Elections Code section 29795, since the former statute "shall not be construed to permit an expenditure of campaign funds prohibited by Section 29795 of the Elections Code." (§ 89522.)

"(3)     Cards.

"(4)     Other papers.

"(e)     Advertising.

"(f)     Postage.

"(g)     Expressage.

"(h)     Telegraphing.

"(i)     Telephoning.

"(j)     All salaries and expenses of:

"(1)     Campaign managers.

"(2)     Lecturers.

"(3)     Solicitors.

"(4)     Agents.

"(5)     All persons employed in transacting business at headquarters or branch offices, if the business transacted is related to promoting or defeating an initiative, referendum, or recall petition or any measure which has qualified for the ballot.

"(k)     Maintaining headquarters and branch offices.

"(l)     Renting of rooms for the transaction of the business of an association.

"(m)     Attorney's fees and other costs in connection with litigation where the litigation arises directly out of any of the following:

"(1)     Activities related to promoting or defeating an initiative, referendum, or recall petition or any measure which has qualified for the ballot.

"(2)     The enactment, by the initiative process, of any ordinance, charter amendment, statute, or constitutional amendment.

"(3)     An election contest or recount.

"(4)     A violation of state or local campaign, disclosure, or election laws.

". . . . . . . . . . . . . . . . . . .

"Expenses for food, clothing, shelter and other personal needs of the trustee are not within the due and lawful execution of the trust.  However, expenses for travel and necessary accommodations for the trustee are within the due and lawful execution of the trust, if the travel and accommodations are related to promoting or

defeating an initiative, referendum, or recall petition or any measure that has qualified for the ballot."

Elections Code section 29795 makes the person possessing campaign funds a "trustee" of the funds. It authorizes the payment of traditionally recognized, ongoing election campaign expenses by a ballot measure committee. It does not expressly address, however, the distribution of surplus campaign funds remaining in the possession of a committee after an election has been held.

In analyzing Elections Code section 29795, we may apply various rules of statutory construction. When interpreting statutory language, we are to "accomplish a result consistent with the legislative purpose, i.e., the object to be achieved and the evil to be prevented by the legislation." (*Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1159.) "Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent." (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com., supra,* 43 Cal.3d 1379, 1387.) "[I]t is well established that reports of legislative committees and commissions are part of a statute's legislative history and may be considered when the meaning of a statute is uncertain." (*Hutnick* v. *United States Fidelity & Guaranty Co.* (1988) 47 Cal.3d 456, 465, fn. 7.)

Elections Code section 29795 (previously numbered 29227) was enacted in 1969. (Stats. 1969, ch. 106, § 1.) We have examined in detail the legislative history of its 1969 enactment. The committee reports indicate that the purpose of the legislation was to prevent the personal use of campaign funds by those in possession of the funds, whether during or after the election campaign. The author of the bill at the time of its introduction in the Assembly, explained its purpose as follows:

"This bill is designed to strike at those who may use a dramatic issue as a guise for collecting money from the public, basically for their own personal use. The public never knows what happens to its money but it should not be used for personal purposes by the collectors."

The author's bill file has numerous references to an incident which prompted the legislation: the use of a $166 check drawn on a recall committee account as payment for a committee member's home loan after the recall had failed for lack of sufficient petition signatures. The report of the Assembly Committee on Elections and Constitutional Amendments stated with respect to the proposed legislation:

"The fraudulent appropriation of money entrusted to another is punishable under the current theft statutes. However, one of the necessary elements which must be proved to achieve a conviction is the existence of a fiduciary or trust relationship. This bill would establish that element whenever a person collects or receives money or things of value for the purpose of promoting or defeating an initiative, referendum or recall. Thus, it would be easier to successfully prosecute a person under the proposed bill than it is under existing law."

In light of this legislative history, we believe that the terms "trust" and "trustee" contained in Elections Code section 29795 may be interpreted in a nontechnical manner. The campaign funds constitute a "trust" in the sense that they are "committed . . . to one to be used or cared for in the interest of another," and the person is a "trustee" in the sense that he or she is to "keep or administer" the funds as "a fiduciary duty." (*Webster's New Internat. Dict.* (3d ed. 1966)

pp. 2456-2457.)  "Entrust" means "to commit or surrender to another with a certain confidence regarding his care, use, or disposal of."  (*Id.,* at p. 759.)

The proposed distributions of the surplus campaign funds at issue satisfy the purposes of Elections Code section 29795.  While the funds were once "earmarked" for the campaign, the election is now over.  Returning the funds to contributors, donating them to a nonprofit organization, contributing them to another campaign effort, using them for educational or lobbying efforts, or retaining them for a future ballot campaign would all meet the requirement that the funds not be used for the "personal needs" of the committee members.

One final statutory scheme merits our attention in resolving the question presented. Ballot measure committees are required to file a "statement of organization" with the Secretary of State.  (§ 84101.)  The statement must disclose "[t]he disposition of surplus funds which will be made in the event of dissolution."  (§ 84102, subd. (f).)  For purposes of our question, we assume that the proposed dispositions would be specified in the committee's statement of organization.

In answer to the question presented, therefore, we conclude that with respect to surplus campaign funds held by a statewide ballot measure committee after an election, the committee may (1) return the funds to contributors on a pro rata basis; (2) return the funds only to contributors of a specified minimum amount; (3) donate the funds to a nonprofit organization or a nonprofit, tax-exempt corporation; (4) contribute the funds to another ballot measure committee, to a candidate committee, or to a political party; (5) use the funds for educational or lobbying efforts with respect to the subject of the ballot measure, if the committee is established for purposes in addition to supporting the ballot measure; or (6) retain the funds for use in a future ballot measure campaign on the same or related subjects.

\* \* \* \*