Filed 4/20/22  P. v. Gonzales CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>DANIEL GONZALES,<br><br>    Defendant and Appellant. | F082181<br><br>(Super. Ct. No. BF180579A)<br><br><br>**OPINION** |

<u>**THE COURT**</u>[*]

APPEAL from a judgment of the Superior Court of Kern County.  John D. Oglesby, Judge.

Mi Kim, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Michael A. Canzoneri and Clifford E. Zall, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Poochigian, Acting P. J., Franson, J. and Peña, J.

Defendant Daniel Gonzales stands convicted, following a jury trial, of receiving a stolen dirt bike. On appeal, defendant contends the trial court erred by (1) admitting evidence of his prior theft convictions, and (2) excluding exculpatory portions of his post-*Miranda*[1] statement. The People disagree as to the first issue. As to the second issue, they agree that the trial court erred by excluding the exculpatory portion of defendant's post-*Miranda* statement but contend that the error was harmless.

We ordered the parties to submit supplemental briefing regarding the impact of Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill 567), which modified Penal Code section 1170, subdivision (b), to require imposition of the middle term of imprisonment unless circumstances in aggravation justify imposition of a greater sentence. (Stats. 2021, ch. 731, § 1.3.) It further modified Penal Code section 1170, subdivision (b), to require that the circumstances in aggravation be found true beyond a reasonable doubt or be stipulated to by the defendant. (*Ibid.*) The parties agree that defendant is entitled to the benefit of Senate Bill 567. We vacate defendant's sentence and remand for resentencing consistent with the changes brought about by Senate Bill 567. In all other respects, we affirm.

## PROCEDURAL SUMMARY

On July 22, 2020,[2] the Kern County District Attorney filed an information charging defendant with receiving a stolen dirt bike (Pen. Code, § 496d, subd. (a); count 1). The information further alleged that defendant had suffered two prior felony vehicle theft convictions and one prior felony receiving stolen property conviction (Pen. Code, § 666.5, subd. (a)).

On November 16, the jury found defendant guilty on count 1 and found true the allegation that the value of the property received exceeded $950. On the same date, the

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436.

[2] All further dates refer to the year 2020 except as otherwise noted.

trial court found true beyond a reasonable doubt that defendant had suffered two prior convictions for vehicle theft and one prior conviction for receiving stolen property.

On December 22, the trial court sentenced defendant to a split term of four years (the upper term) pursuant to Penal Code section 1170, subdivision (h)—with two years to be served in custody and two years to be served on mandatory supervision.

On the same date, defendant filed a notice of appeal.

## FACTUAL SUMMARY

### The Prosecution's Case

In August 2019, Scott T. owned a 1999 dirt bike (the dirt bike) that he stored at a storage facility in Kern County. He kept the dirt bike chained to his trailer in the storage facility. The dirt bike was in good working condition. It was blue and white and was modified with several after-market accessories including a fuel tank, hand guards, and a custom aluminum plate used to hold a gas cannister. Scott estimated that the dirt bike was worth approximately $2,500 based on a search of the same model dirt bikes for sale. He found "five or six listings" with asking prices between "about $2,000 to $3,300."

On August 8, 2019, Scott reported the dirt bike stolen. He had the only keys and he had not granted permission to anyone to take the dirt bike. He did not know defendant and had not given him permission to take the dirt bike.

On the same date, Kern County Sheriff's Deputy Enrique Plaza responded to a 911 call reporting theft of the dirt bike and vandalism. He saw that the chain link fence was cut near where vehicles, trailers and boats were stored. He contacted Scott and obtained the Vehicle Identification Number (VIN) for the dirt bike. He entered that number into the Department of Motor Vehicles' system for reporting stolen vehicles.

On April 1, 2020, Kern County Sheriff's Deputy Robert Fisher was dispatched to a 911 call regarding a dispute between neighbors in Kern County. When he arrived at the call location, he found a residence with multiple vehicles cluttering the driveway and roadway (the residence). Some of the vehicles were missing license plates and some of

3.

the vehicles had been stripped of parts. Fisher saw defendant at the residence. Fisher "ran a records check on every vehicle that [he] could find a VIN number for[,]" including the dirt bike. He discovered that the dirt bike had been reported stolen. None of the other vehicles had been reported stolen. When Fisher found the dirt bike, it had been partially disassembled—it was missing the seat, possibly the radiator, the engine was partially disassembled, and several plastic pieces were missing.

Kern County Sheriff's Deputy Andrew Carney was also dispatched to the same call on the same date. When he arrived at the residence, defendant and two other people were seated on the curb in front of the residence. Carney asked defendant about the vehicles parked in front of the residence.[3] Defendant said that all the vehicles parked in front of the residence except for a motorcycle (not the dirt bike) belonged to him and he had a "pink slip" for all of them. In Carney's presence, defendant mentioned that the dirt bike had a value of $900. When Fisher learned that the dirt bike was stolen, he relayed that information to Carney who placed defendant under arrest. After his arrest, defendant told Carney that he did not have a pink slip for the dirt bike.

Eventually, Scott was informed that his dirt bike had been recovered and was in an impound yard. However, "it had been completely stripped and destroyed and there were fees that were due to release" the dirt bike. Scott paid $300 and released the title of the dirt bike in exchange for release of the impound fees.

**Defendant's Case**

Defendant testified that he lived at the residence with his grandmother and girlfriend. He testified that he purchased the dirt bike from Jared Morrison, "who told [him] it was not stolen." He learned of the dirt bike through a friend[4] who knew that he

---

[3]    Carney wore a body camera that captured video footage of his interactions with defendant. A portion of that video footage was admitted into evidence.

[4]    Defendant also testified that he learned about the dirt bike from his brother-in-law.

4.

bought and fixed motorcycles and cars that were not operational. Defendant explained that it was nighttime when he learned of the dirt bike for sale, and he was not permitted to leave the house at that time because he "was on the ankle monitor."[5] That evening, about four days before defendant's arrest, his brother-in-law purchased the dirt bike for him and received a bill of sale that he believed to be signed by Morrison and dated March 31, 2020.[6] Defendant provided the bill of sale to the sheriff's deputies on the date he was arrested.

Defendant paid $300 in cash for the dirt bike. That amount seemed reasonable in light of the poor condition of the dirt bike. Defendant testified that the dirt bike appeared to be intact but "it wouldn't start." He also did not receive keys for the dirt bike. He asked Morrison about how long he had owned the dirt bike and about its condition. Morrison said that he had gotten it in trade for "a generator and a[n] RV or something like that."

Defendant testified that he had no knowledge that the dirt bike was stolen. When officers arrested him, he was taking the dirt bike apart in the process of repairing it. The engine was damaged, so he began removing the valves and rods in his front yard. He explained that he would not put a stolen vehicle in his front driveway and work on it if he knew it was stolen.

Defendant testified that he could not have stolen the dirt bike because he was wearing an ankle monitor at the time. He had been on the ankle monitor for about a year when he was arrested. Defendant was asked whether he suffered a conviction under Health and Safety Code section 11378 in 2019. He did not know. However, he testified that he had previously been convicted of "all kinds of theft[-]related stuff[,]" including

---

[5]    Defendant also testified that he met with Morrison during the daytime on the same date but did not complete the purchase. Morrison did not want to sell him the dirt bike.

[6]    The bill of sale was admitted as defendant's Exhibit A.

vehicle theft on multiple occasions. He admitted having suffered a conviction for burglary in 2016 and two felony convictions in 2019.

Defendant knew that a vehicle being stripped, having no keys, and having no title could all be signs that it was stolen.

## DISCUSSION

Defendant challenges the trial court's admission of evidence of his prior convictions for vehicle theft pursuant to Evidence Code section 1101, subdivision (b)[7] and exclusion of the portion of Carney's body camera footage that depicted defendant attempting to provide him with a bill of sale for the dirt bike.

### A. Evidence of Defendant's Prior Vehicle Theft Convictions

Defendant contends that evidence of his prior vehicle theft convictions was not properly admitted pursuant to section 788 or section 1101, subdivision (b). He argues that (1) the evidence was not probative of his knowledge that the dirt bike was stolen in this case and (2) the risk of unfair prejudice outweighed any possible probative value, for purposes of character or impeachment.

The People respond that no specific evidence regarding defendant's prior vehicle theft convictions was adduced at trial; only the fact of the prior convictions was introduced. Therefore, they argue, evidence was admitted only pursuant to section 778, and not pursuant to section 1101, subdivision (b). Moreover, the People argue that because the trial court instructed the jury that it could only consider defendant's prior convictions in determining his credibility and for no other purpose, the jury did not consider that evidence to show his disposition to commit the charged offense. We agree with the People.

---

**7**    All further statutory references are to the Evidence Code unless otherwise stated.

1.  Additional Background

Prior to trial, the prosecutor sought an order permitting admission of the facts surrounding defendant's 2019 vehicle theft conviction pursuant to section 1101, subdivision (b), and, if defendant testified, 13 of defendant's prior convictions to impeach his credibility pursuant to section 788.  The trial court declined to permit the prosecutor to introduce the section 1101, subdivision (b) evidence in the People's case in chief and limited the section 788 convictions to four of the 13.  The trial court indicated that the section 1101, subdivision (b), evidence may be admissible if defendant testified that he did not know that the dirt bike was stolen.

No evidence of defendant's prior convictions was admitted until defendant testified.  Defendant was asked about four convictions.  The exchange began as follows:

> "[THE PROSECUTOR:]  [Y]ou were convicted of a felony on June 3[,] 2019[,] for a violation of Health and Safety Code [section] 11378.  Isn't that right?
>
> "[DEFENDANT:]  I've been convicted of a lot of felonies.  I don't know the Health & Safety codes nor the dates.  I have a long list of priors.
>
> "[THE PROSECUTOR:]  Like what?
>
> "[DEFENDANT:]  All kinds of theft[-]related stuff.
>
> "[THE PROSECUTOR:]  All kinds of what?
>
> "[DEFENDANT:]  All kinds of theft[-]related stuff.
>
> "[THE PROSECUTOR:]  For what?
>
> "[DEFENDANT:]  For everything.  Everything you can think of.
>
> "[THE PROSECUTOR:]  Such as what?
>
> "[DEFENDANT:]  I just said everything you can think of, sir.  From cars to tools to […]
>
> "[THE PROSECUTOR:]  So you've stolen cars before?

"[DEFENDANT:]  Yeah, I've been—yes.  Numerous times.  Lots of times.

"[THE PROSECUTOR:]  Okay.  So you're saying lots of times. How many times?

"[DEFENDANT:]  I've stolen many cars in my life.  I've been convicted of it lots of times.

"[THE PROSECUTOR:]  You what?

"[DEFENDANT:]  I've been convicted of it lots of times."

Later, the prosecutor again asked defendant about his prior convictions:

"[THE PROSECUTOR:]  Now, you were convicted on September 1[,] 2016[,] of a violation of Penal Code [s]ection 460[, subdivision (b),] as a felony.  That's burglary.  Isn't that right?

"[DEFENDANT:]  Yeah.  I don't know the dates.  [¶]  …  [¶]

"[THE PROSECUTOR:]  You also suffered a felony conviction on July 18[,] 2019.  Isn't that right?

"[DEFENDANT:]  Uh-huh.  Yes.

"[THE PROSECUTOR:]  You suffered a separate felony conviction on July 18[,] 2019.  Isn't that right?

"[DEFENDANT:]  I have lots of them, sir.  Numerous.  I can't recall the dates of all."

2.  Legal Framework

A witness's credibility may be impeached with evidence of felony convictions. (§ 788.)  Additionally, under the "Right to Truth-in-Evidence" provision of the California Constitution (Cal. Const., art. I, § 28, subd. (f)(2)), evidence of past misconduct is admissible for impeachment if the conduct involves moral turpitude because it shows a willingness to lie.  (*People v. Wheeler* (1992) 4 Cal.4th 284, 292, 295–296.)  Evidence of prior misconduct or a prior felony conviction for purposes for impeachment is subject to court discretion under section 352, weighing probative value against unfair prejudicial impact.  (*People v. Gutierrez* (2018) 28 Cal.App.5th 85, 89;

8.

*People v. Anderson* (2018) 5 Cal.5th 372, 407 [prior felony conviction].) "When determining whether to admit a prior conviction for impeachment purposes, the court should consider, among other factors, whether it reflects on the witness's honesty or veracity, whether it is near or remote in time, whether it is for the same or similar conduct as the charged offense, and what effect its admission would have on the defendant's decision to testify." (*People v. Clark* (2011) 52 Cal.4th 856, 931.)

Separate from admission of evidence related to a witness's credibility, section 1101 governs admissibility of character evidence, including evidence of prior misconduct. It provides that character evidence, including "specific instances of [a person's] conduct," is generally "inadmissible when offered to prove [that person's] conduct on a specified occasion" or "disposition to commit" a crime or other wrongful act. (§ 1101, subds. (a) & (b).) However, evidence of prior misconduct can be admitted under section 1101 "when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act … did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act." (§ 1101, subd. (b); *People v. Ewoldt* (1994) 7 Cal.4th 380, 402 & fn. 6, 403.) Evidence offered pursuant to section 1101, subdivision (b), is also subject to exclusion pursuant to section 352.

We review a trial court's decision regarding admission of evidence under section 352, weighing its probative value against the undue consumption of time or the danger of undue prejudice, confusing issues, or misleading the jury, for an abuse of discretion. (*People v. Williams* (2008) 43 Cal.4th 584, 634–635.) We will not disturb the trial court's exercise of its discretion unless it acted arbitrarily, capriciously, or in a patently absurd manner. (*Ibid*.; *People v. Homick* (2012) 55 Cal.4th 816, 865.)

9.

3. Analysis

We first determine whether the evidence was appropriately admitted under section 788 and/or section 1101, subdivision (b). In this case, the prosecutor did not delve into the facts and circumstances surrounding defendant's prior vehicle theft convictions. As the People correctly note, only the fact of four of defendant's convictions was specifically presented to the jury. While defendant acknowledged having stolen "many cars in [his] life" and having been convicted of vehicle theft "lots of times," no specific details regarding any of those convictions was presented. Moreover, the trial court instructed the jury regarding limited purpose testimony generally and the limited purpose for which it could consider defendant's testimony. It instructed:

> "This instruction is regarding limited purpose evidence. During the trial certain evidence was admitted for a limited purpose. You may consider that evidence only for that purpose and for no other.

> "And this is regarding witness credibility. If you find that a witness has been convicted of a felony, you may consider that fact only in evaluating the credibility of the witness's testimony. The fact of a conviction does not necessarily destroy or impair a witness's credibility. It's up to you to decide the weight of that fact and whether that fact makes the witness less believable."

The trial court did not instruct the jury that it could consider evidence of defendant's convictions to prove that he knew the dirt bike was stolen or for any other purpose.

The record confirms that the evidence of defendant's prior convictions was admitted to impeach defendant's credibility as a witness pursuant to section 788. The court did not instruct the jury regarding use of the evidence of or facts surrounding defendant's vehicle theft convictions to prove defendant's knowledge that the dirt bike was stolen. Absent some indication to the contrary appearing in the record, we presume

the jury followed the court's instructions regarding limited purpose evidence. (*People v. Johnson* (2015) 61 Cal.4th 734, 770.)[8]

As noted above, evidence proffered pursuant to section 788 is subject to exclusion in the court's discretion pursuant to section 352. Defendant contends that the trial court failed to "perform[] the requisite … section 352 analysis before admitting the prior vehicle theft crimes for impeachment." Defendant contends that reversal is required for that reason. We disagree.

The trial court discussed the relevant section 352 considerations. Namely, it excluded the convictions that were more remote in time; it noted that the vehicle theft convictions were similar to the charged offenses so they should be sanitized and referred to as "felon[ies] involving moral turpitude"; and it noted that defendant's "criminality is significant and does indicate a factor that … is significant for the trier of fact to determine" credibility. (See *People v. Clark*, *supra*, 52 Cal.4th 856, 931 [a section 352 analysis in the impeachment context should consider whether the conviction "reflects on the witness's honesty or veracity, whether it is near or remote in time, whether it is for the same or similar conduct as the charged offense, and what effect its admission would have on the defendant's decision to testify"].) We cannot conclude that the trial court acted arbitrarily, capriciously, or in a patently absurd manner. (*People v. Homick*, *supra*, 55 Cal.4th at p. 865.) We find no abuse of discretion.

### B. Rule of Completeness

The prosecutor introduced an inculpatory portion of defendant's post-*Miranda* statement wherein defendant admitted he did not have a pink slip or bill of sale for the dirt bike. The complete video included defendant's statement that he had purchased the dirt bike three days prior and had a bill of sale. The prosecutor objected to admission of

---

[8]    Because we conclude that the evidence was appropriately admitted pursuant to section 788, we need not determine whether it would also have been appropriately admitted pursuant to section 1101, subdivision (b).

the exculpatory portion of the statement and the trial court sustained the objection.

Defendant contends that it was error for the trial court to exclude the exculpatory portion of the statement. The People agree, but argue that the error was harmless. We agree with the People.

The rule of completeness is codified in section 356. It reads:

> "Where part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by an adverse party; … and when a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation, or writing which is necessary to make it understood may also be given in evidence." (§ 356.)

"The purpose of … section 356 is 'to prevent the use of selected aspects of a conversation, act, declaration, or writing, so as to create a misleading impression on the subjects addressed.' " (*People v. Clark* (2016) 63 Cal.4th 522, 600.) Section 356 is designed to provide context. " ' " 'In applying … section 356 the courts do not draw narrow lines around the exact subject of inquiry. "In the event a statement admitted in evidence constitutes part of a conversation or correspondence, the opponent is entitled to have placed in evidence all that was said or written by or to the declarant in the course of such conversation or correspondence, provided the other statements have *some bearing upon*, *or connection with*, the admission or declaration in evidence …." ' " ' " (*Ibid.*) The fact that a portion of a defendant's statement is self-serving or tends to exonerate the defendant does not limit the admissibility of that portion of the statement under section 356 when a different and related portion is admitted. (*People v. Arias* (1996) 13 Cal.4th 92, 156.)

In this case, the trial court admitted post-*Miranda* video footage regarding whether defendant had purchased the dirt bike and whether he had some proof of ownership, such as a pink slip or bill of sale. However, the trial court admitted only the portion of the video that contained defendant's admission that he *did not* have a bill of sale; it omitted

the later portion of the video where he apparently told Carney that he *did* have a bill of sale. The parties agree, as do we, that the exclusion of the exculpatory portion of the video on the same topic was error.

Defendant contends that the error was reversible because it resulted in a violation of his right to due process, secured by the Fourteenth Amendment to the United States Constitution, and his right to confront witnesses, secured by the Sixth Amendment to the United States Constitution. He therefore encourages us to apply the standard articulated in *Chapman v. California* (1967) 386 U.S. 18, for federal constitutional error. Under that standard, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." (*Id.*, at p. 24.) The People, on the other hand, characterize the error as one of state law, that absent fundamental unfairness (*People v. Partida* (2005) 37 Cal.4th 428, 439), is reversible only as provided by *People v. Watson* (1956) 46 Cal.2d 818. Under the *Watson* standard, the reviewing court should not reverse unless "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Id.* at p. 836.) Our Supreme Court has evaluated claims of erroneous admission of evidence pursuant to section 356 under the *Watson* standard. (*People v. Riccardi* (2012) 54 Cal.4th 758, 804, disapproved on other grounds in *People v. Rangel* (2016) 62 Cal.4th 1192, 1216.) Moreover, because the error claimed by defendant is merely the rejection of certain evidence concerning his defense, and not a wholesale preclusion of that defense or the right to cross-examine Carney, the *Watson* test applies—i.e., reversal is required only if it is "reasonably probable that the defendant would have obtained a more favorable result absent the error." (*People v. Garcia* (2008) 160 Cal.App.4th 124, 133; *People v. Bradford* (1997) 15 Cal.4th 1229, 1325.)

The error in not admitting the exculpatory portion of the statements did not render the trial fundamentally unfair and was harmless under *Watson*. Defendant testified that he had a bill of sale for the dirt bike on the date he was arrested. He testified that

13.

Carney's body camera footage was not complete and that he offered to provide Carney with the bill of sale on the date of his arrest. That bill of sale was admitted into evidence. The jury also heard Carney's testimony that defendant initially said that he had pink slips for all of the vehicles, including the dirt bike; and that defendant later denied having a pink slip or bill of sale for the dirt bike. The jury further heard evidence that the dirt bike had been stripped when it was found, that defendant did not receive keys for the dirt bike, and that Scott retained the title for the dirt bike. Defendant admitted that all of those factors could indicate that a vehicle was stolen. Based on the facts presented, there is no reasonable probability that the outcome would have been different if defendant had been permitted to present the omitted portion of his post-*Miranda* statement.

### C.  Senate Bill 567

Effective January 1, 2022, Senate Bill 567 amended Penal Code section 1170, subdivision (b)(2), such that it now provides, "[t]he court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).)  A trial court is permitted to rely upon a certified record of conviction to determine prior criminality for purposes of sentencing without submitting the prior conviction to a jury.  (§ 1170, subd. (b)(3).)  Defendant was sentenced to the upper term of four years (as a split sentence) and there is no indication in the record that the circumstances in aggravation relied upon by the trial court were proved beyond a reasonable doubt, admitted by defendant, or findings of prior criminality based upon certified records of convictions.  The parties agree, as do we, that Senate Bill 567 is retroactive to cases not yet final on appeal pursuant to *In re Estrada* (1965) 63 Cal.2d 740 (see *People v. Flores* (2022) 73 Cal.App.5th 1032, 1038–1039 [remanding for resentencing under another ameliorative amendment to section 1170 by Senate Bill 567])

14.

and defendant's sentence is not yet final on appeal.  Therefore, defendant is entitled to resentencing under Senate Bill 567.

## **DISPOSITION**

Defendant's sentence is vacated and the matter is remanded to the trial court for resentencing, and any required factfinding, consistent with Senate Bill 567.  In all other respects, the judgment is affirmed.