TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

------------------------------

| | | |
|---|---|---|
| OPINION | : | |
| | : | |
| of | : | |
| | : | |
| JOHN K. VAN DE KAMP | : | No. 87-1001 |
| Attorney General | : | |
| | : | JANUARY 20, 1988 |
| RODNEY O. LILYQUIST | : | |
| Deputy Attorney General | : | |

----------------------------------------------------------------

THE COMMISSION ON TEACHER CREDENTIALING has requested an opinion on the following questions:

1. When a teacher is assigned to a position that requires instruction to pupils who are non-English speaking and the teacher delivers all or part of the instruction in a language other than English, is the teacher required to hold a credential or certificate specifically authorizing such other-than-English instruction?

2. May the Commission on Teaching Credentialing continue to issue credentials and certificates specifically authorizing other-than-English instruction?

CONCLUSIONS

1. When a teacher is assigned to a position that requires instruction to pupils who are non-English speaking and the teacher delivers all or part of the instruction in a language other than English, the teacher is not required to hold a credential or certificate specifically authorizing such other-than-English instruction.

2. The Commission on Teacher Credentialing may continue to issue credentials and certificates specifically authorizing other-than-English instruction.

ANALYSIS

A teacher is assigned to a class in which the pupils do not speak English. Instruction in a language other than English is thus necessary for the pupils to understand the

subject matter. The questions presented for analysis concern whether the teacher is required to have a credential or certificate specifically authorizing other-than-English instruction and whether such credentials or certificates may continue to be issued by the Commission on Teacher Credentialing ("Commission"). We conclude that a special credential or certificate would not be required to teach the class but that the Commission may continue to issue such credentials and certificates.

In analyzing these questions, we will interpret the governing statutes in reliance upon well-established principles of statutory construction. It is a "fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent." (People v. Woodhead (1987) 43 Cal.3d 1002, 1007.) In determining legislative intent, we look first to the words themselves (People v. Overstreet (1986) 42 Cal.3d 891, 895), giving them an ordinary and commonly understood construction (Schmidt v. Superior Court (1987) 43 Cal.3d 1060, 1065-1066). "[S]ignificance should be attributed to every word and phrase of a statute, and a construction making some words surplusage should be avoided." (People v. Woodhead, supra, 43 Cal.3d 1002, 1010.) "[T]he various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole." (People v. Black (1982) 32 Cal.3d 1, 5.) "The legislative history of the statute as well as the historical circumstances of its enactment may be considered in determining the intent of the Legislature." (People v. Jeffers (1987) 43 Cal.3d 984, 993.) The Legislative Counsel's Digest has been used frequently by California courts to discern evidence of legislative intent. (See People v. Tanner (1979) 24 Cal.3d 514, 520; People v. Superior Court (Douglass) (1979) 24 Cal.3d 428, 434; Rockwell v. Superior Court (1976) 18 Cal.3d 420, 443.)

1. Special Credential or Certificate Requirement

Until recently school districts operated bilingual education programs under detailed requirements established by the Legislature. (See Ed. Code, §§ 52150-52179.)[1] One of the key components of the program was that the teachers were to meet certain qualifications unless waived under narrowly drawn conditions. (§§ 52163, 52165, 52166, 52172, 52178; Cal. Code of Regs., tit. 5, § 4309.) Subdivision (h) of section 52163 provides:

"'Bilingual-crosscultural teacher' means a person who (1) holds a valid, regular California teaching credential and (2) holds either a bilingual-crosscultural certificate of proficiency or other credential in bilingual education authorized by the Commission for Teacher Preparation and Licensing or a bilingual-crosscultural specialist credential. Such a person shall be fluent in the primary language and familiar with the cultural heritage of limited-English-proficiency pupils in the bilingual classes he or she conducts. Such a person shall have a professional

_____

[1]All references hereafter to the Education Code are by section number only.

demonstrated working knowledge of the methodologies which are necessary to educate effectively those pupils." (Emphasis added.)[2]

Based upon this definition, the Legislature required that "the school district shall provide at least one certified bilingual-crosscultural teacher or teachers . . ." (§ 52165, subd. (a)(2)), "[a]ll teachers providing instruction in programs . . . shall meet the criteria of subdivision (h) of Section 52163" (§ 52166), "[t]eachers . . . who are not bilingual-crosscultural teachers . . . as defined by subdivision (h) of Section 52163, shall not be permitted to teach in programs . . ." (§ 52172), and "[a]ll principal teachers providing instruction in programs . . . shall be bilingual-crosscultural teachers as defined pursuant to subdivision (h) of Section 52163 . . ." (§ 52178). These statutes thus generally required a teacher to have a special credential or certificate to teach in a language other than English.

The Legislature, however, has provided in section 62002.2: "The following programs shall sunset on June 30, 1987: . . . Bilingual education." As used in this statute, "sunset" means "the date on which specific categorical programs cease to be operative." (§ 62000.) Since the bilingual education program is mentioned in section 62000.2, it comes under the following mandate of section 62000: "The educational programs referred to in Sections 62000.1 to 62000.5, inclusive, shall cease to be operative on the date specified . . . ."

While the bilingual education program has ceased to be operative under the broad terms of these statutes, section 62002 specifies that the state funding for the program nonetheless continues:

"If the Legislature does not enact legislation to continue a program listed in Sections 62000.1 to 62000.5, inclusive, the funding of that program shall continue for the general purposes of that program as specified in the provisions relating to the establishment and operation of the program. The funds shall be disbursed according to the identification criteria and allocation formulas for the program in effect on the date the program shall cease to be operative pursuant to Sections 62000.1 to 62000.5, inclusive, both with regard to state-to-district and district-to-school disbursements. The funds shall be used for the intended purposes of the program, but all relevant statutes and regulations adopted thereto regarding the use of the funds shall not be operative, except as specified in Section 62002.5." (See § 62000.)[3]

The Department of Education is required to audit the use of the state funds by the districts "to ensure that such funds are expended for eligible pupils according to the purposes for which the legislation

[2]Bilingual-crosscultural certificates are issued under the authority of sections 44253.5 and 44253.7 (see also § 56362.7), while credentials in bilingual education are issued under the authority of sections 44256 and 44265 (see also § 44254). The Commission was formerly known as the Commission for Teacher Preparation and Licensing. (§ 44203, subd. (a).)

[3]Section 62002.5 provides that parent advisory committees and school site councils shall continue to be established and exist in certain circumstances.

was originally established for such programs." (§ 62003.) Accordingly, while the bilingual education program has ceased to be operative generally, state funds continue to be apportioned to serve the various purposes of the program for eligible pupils.[4]

What is significant here is that the Legislature has not continued the statutory requirement for teachers to have special credentials and certificates in order to teach in a language other than English. It has continued certain requirements (§§ 62002, 62002.5), but not the special qualification requirements for teachers. Eligible pupils are to receive the instruction and the general purposes of bilingual education program are to be served, but these may be accomplished with competent teachers who do not have a special credential or certificate.

The purposes of the "sunset" legislation were described by the Legislature as follows: "It is the intent of the Legislature, in enacting this act, to maintain and improve educational program quality while providing greater flexibility at the state and local levels, and to reduce paperwork which does not have direct education benefit." (Stats. 1983, ch. 1270, § 1.) The Legislature thus expresses concern for program quality, local flexibility, and reduced paperwork. Clearly school districts are encouraged to employ the best teachers for accomplishing bilingual education objectives whether or not they have a special state credential or certificate.

We also note that the statutory mandate for a special credential or certificate authorizing instruction in a language other than English contained its own waiver provisions. (§§ 52178-52178.4.) A waiver would of course no longer be necessary if the special credential or certificate were itself no longer necessary, and section 52178.3 provides: "An extension of waivers granted pursuant to Section 52178 shall be granted until July 1, 1987, the scheduled sunset date for bilingual education programs prescribed by section 62000, or until any prescribed earlier date for the sunset of these programs . . . ." Section 52178.3 is consistent with the determination that special credentials and certificates were no longer required after July 1, 1987.

Moreover, subsequent legislative acts demonstrate that the Legislature understood that one effect of the "sunset" repeal of the bilingual education program was to eliminate the special teacher qualification requirements. The Legislative Counsel's Digest for the legislative bill that would have extended the bilingual education program stated in part:

"Existing law, which has become inoperative, as specified, requires that all teachers and aides providing specified bilingual instruction meet specified criteria unless waived, as specified, requires that school districts certify that sufficient teachers and aides meeting these requirements are available, as specified, and authorizes the provision of instruction by personnel who do not meet these requirements if the principal teachers and aides providing instruction in the program

_____

[4]The primary goal of the bilingual education program "is, as effectively and efficiently as possible, to develop in each child fluency in English," and in addition the program is intended to "provide positive reinforcement of the self-image of participating students, promote crosscultural understanding, and provide equal opportunity for academic achievement." (§ 52161.)

meet certain criteria, as specified." (Legis. Counsel's Dig., Assem. Bill No. 37 (1987-1988 Reg. Sess.), emphasis added.)

Besides issuing special credentials and certificates in bilingual education, the Commission issues specialist instruction credentials or certificates in agriculture, early childhood education, health science, mathematics, reading, and special education. (See § 44265; Cal. Code of Regs., tit. 5, § 80048.) The Legislature has rarely required, however, that the subjects covered by a special credential or certificate be taught by only those with the special credential or certificate. (See, e.g., §§ 44265.5, 52450-52454, 56001.) Treating the bilingual education credentials and certificates as no longer statutorily required to teach in a bilingual education program would thus be consistent with the usual treatment of special credentials and certificates.

Hence, a teacher need only have a credential or certificate authorizing instruction of a particular subject in order to teach the subject in a language other than English.[5] The school district has the flexibility to choose the best teachers for its bilingual education program without regard to whether a credential or certificate in bilingual education is held by every teacher. Having a bilingual education credential or certificate does, of course, evidence that the teacher is competent, and a school district may undoubtedly rely upon such authorizing credentials and certificates in employing its teaching staff. All that we conclude is that competence may be established by other criteria. The significant aspect for the Legislature as set forth in the "sunset" legislation is the results of the program -- maintaining and improving the quality of the program through greater flexibility and concentration of resources.

We recognize that federal law imposes requirements on school districts and the states in providing instruction to students with limited English language proficiency. The Educational Opportunities Act of 1974 states in part:

"No state shall deny equal educational opportunity to an individual on account of his or her race, color, sex, or national origin, by ---

" . . . . . . . . . . . . . . . . . . . . . . . .

"(f) the failure by an educational agency to take appropriate action to overcome language barriers that impede equal participation by its students in its instructional programs." (20 U.S.C. § 1703.)

The Civil Rights Act of 1964 states in part:

"No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected

---

[5]The Commission issues various types of credentials, including emergency credentials (§ 44254), life credentials (§ 44255), and four basic kinds of teaching credentials (§ 44256).

to discrimination under any program or activity receiving Federal financial assistance."  (42 U.S.C. § 2000d.)

While the states and local school districts have substantial latitude in choosing their bilingual programs to meet the federal requirements (Gomez v. Illinois State Bd. of Educ. (7th Cir. 1987) 811 F.2d 1030, 1040), a district's program must have teachers who are competent in bilingual skills and such competency must be objectively determined by the district (Castaneda v. Pickard (5th Cir. 1981) 648 F.2d 989, 1012-1013; Keyes v. School Dist. No. 1 (D.Colo. 1983) 576 F.Supp. 1503, 1516-1517).

As for each state, the federal law imposes an obligation to supervise its local school districts to ensure that the needs of students with limited English language proficiency are addressed. (Idaho Migrant Council v. Board of Ed. (9th Cir. 1981) 647 F.2d 69, 71.)  General state guidelines in establishing and assuring the implementation of the state's programs are required.  This state responsibility includes "establishing the minimums for the implementation of language remediation programs and enforcing those minimums."  (Gomez v. Illinois State Bd. of Educ., supra, 811 F.2d 1030, 1043.)

The ultimate goal of the federal requirements is the same as expressed by the Legislature -- obtaining results indicating that the language barriers confronting the students are actually being overcome.  (Gomez v. Illinois State Bd. of Educ., supra, 811 F.2d 1030, 1042; Castaneda v. Pickard, supra,  648 F.2d 989, 1010.)  Such a goal may be reached even though the teachers in the program do not have a special state credential or certificate.  Indeed, a district is not "limited to hiring only teachers who are already qualified to teach in a bilingual program" as long as it undertakes to "improve the ability of any teacher . . . to teach effectively in a bilingual classroom."  (Castaneda v. Pickard, supra, 648 F.2d 989, 1013.)  We find no indication in federal law that a teacher's competency in bilingual skills must be established by a particular state document.

In answer to the first question, therefore, we conclude that when a teacher is assigned to a position that requires instruction to pupils who are non-English speaking and the teacher delivers all or part of the instruction in a language other than English, the teacher is not required to hold a credential or certificate specifically authorizing such other-than-English instruction.

2.  Continued Credential and Certificate Issuance

Although a special credential or certificate is no longer required, may the Commission continue to issue the special credentials and certificates in light of the Legislature's directive that the bilingual education program "shall cease to be operative" (§ 62000) on July 1, 1987?  The Legislature has also declared that "all relevant statutes . . . regarding the use of bilingual education funds shall not be operative" except in one instance not relevant here.  (§ 62002.)  Are the statutes authorizing issuance of bilingual education credentials and certificates "relevant" statutes now rendered inoperative by the Legislature?

We believe that the authority of the Commission to issue credentials and certificates has not been affected by the "sunsetting" of the bilingual education program. First, the school districts are still operating the programs with funds allocated by the state. Undeniably it is necessary that a district know which teachers are competent to teach in a language other than English, and a bilingual education credential or certificate would so indicate.

The purposes of the "sunset" legislation would not be served by removing the authority of the Commission to issue special credentials and certificates. The denial of Commission authority would not help "maintain and improve educational quality" and would not "reduce paperwork which does not have direct education benefit." (Stats. 1983, ch. 1270, § 1.) As for the purpose of "greater flexibility at the state and local levels," suspending Commission authority to issue special credentials and certificates would lessen flexibility and the options available for school districts.

The authority of the Commission to issue bilingual education credentials and certificates (§§ 44253.5, 44253.7, 44254, 44256, 44265) is contained in the Teacher Preparation and Licensing Law of 1970, also known as the "Ryan Act" (§§ 44200-44354). The bilingual education categorical program (§§ 52150-52179) is not part of the Ryan Act. Accordingly, when the Legislature provided that the bilingual education program was to cease being operative on July 1, 1987 (§ 62000), it was not referring to the Ryan Act or the Commission's authority to issue special credentials and certificates. Moreover, the Ryan Act is not part of the funding provisions for the bilingual educational categorical program. (See §§ 63000, 64000.) No bilingual education funds are used to implement the Ryan Act. The Ryan Act and the statutes authorizing the Commission to issue special credentials and certificates are thus not "relevant statutes . . . regarding the use of bilingual education funds." (§ 62002.) If the Legislature had intended to remove the Commission's authority to issue bilingual education credentials and certificates, it easily could have referred to those statutes in the "sunset" legislation. Since the authority to issue credentials and certificates is distinctly separate from the statutory requirements of the bilingual education program, we believe that such express reference would be necessary to effectuate the suspension of Commission authority.

In answer to the second question, therefore, we conclude that the Commission may continue to issue credentials and certificates specifically authorizing other-than-English instruction.

\* \* \* \* \*