Filed 5/23/22  P. v. Velazquez-Cordero CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br>DANIEL VELAZQUEZ-CORDERO,<br><br>        Defendant and Appellant. | A156420<br><br>(San Mateo County<br>Super. Ct. No. 17NF012699) |

A jury found defendant Daniel Velazquez-Cordero guilty of multiple counts of robbery and false imprisonment for his role in the armed robbery of a bank in Daly City.  The evidence admitted at trial included cell phone records showing defendant's location in Daly City at the time of the robbery.  On appeal, defendant contends the trial court erred in admitting this location data evidence because it had been previously suppressed twice, and under Penal Code[1] section 1538.5, subdivisions (j) and (p), the People could not relitigate the matter a third time.  We find no error, as the second of the two rulings in question did not constitute a grant of a suppression motion within the meaning of section 1538.5.  Accordingly, we affirm the judgment.

---

[1]     Further unspecified statutory references are to the Penal Code.

1

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant was one of four individuals charged and convicted in connection with the 2016 robbery of the First National Bank in Daly City. The three others were Gabriel Mosby, Leroy Wilson, and Deon Taylor. The theory of the prosecution was that defendant (the gunman) and Taylor carried out the robbery inside the bank, while Mosby acted as a planner and lookout, and Wilson drove the getaway car.[2]

The robbery occurred shortly after noon on September 15, 2016. Witnesses recalled two or possibly three men in masks and dark clothing, one of whom was armed with a gun, ordering the customers to get down on the ground. One of the suspects was heard speaking with a thick accent described as a Filipino accent.

Bank surveillance cameras captured video of two masked suspects and certain distinguishing features of their clothing, including a black jacket with red striping along the sides and a white belt that hung down the side of one of the suspect's pants. Neighborhood surveillance cameras captured video of one suspect wearing a checkered backpack; another suspect wearing all white shoes that stood out against his dark clothing; and a gold Cadillac driving from the scene just after the robbery. The suspects stole over $10,000 from the bank and also took the purse of a bank customer, Raquel V.

Suspicious activity on Raquel V.'s credit card account led the police to Wilson, who was staying at a hotel in Pleasant Hill. Police arrested Wilson

---

[2]     Mosby and Wilson were tried jointly and separately from defendant and Taylor, and their convictions were affirmed on appeal. (*People v. Mosby* (Mar. 4, 2022, A156282) [nonpub. opn.].) The instant appeal was initially consolidated with Taylor's appeal, but on January 29, 2021, we ordered the cases severed on our own motion. We previously affirmed the judgment against Taylor in an unpublished opinion. (*People v. Taylor* (Apr. 21, 2021, A156272 [nonpub. opn.].)

after he drove up to the hotel in a gold Cadillac that matched the vehicle seen in the surveillance videos. Police found a loaded semiautomatic firearm in the Cadillac and cash on Wilson's person that matched the serial numbers from the bank's "bait list" of bills taken during the robbery. A search of Wilson's hotel room led to the discovery of a plaid backpack that matched the backpack worn by one of the suspects on the surveillance videos, and inside the backpack were Raquel V.'s belongings. A letter in the hotel room led police to a Vallejo residence where they found Taylor and a jacket with distinctive red striping that matched the one seen in the bank surveillance video.

Police identified Mosby in the neighborhood surveillance videos and learned he was staying at a motel in Fairfield. There, police detained Mosby, Mosby's wife, and defendant and found $1,405 on defendant's person. According to one of the arresting officers, defendant spoke with a "pretty thick, pretty pronounced" "Hispanic" accent. In the motel room, police found a pair of white sneakers, bottles of medication prescribed to defendant, and a pair of denim jeans with a white belt that matched the belt seen in the bank surveillance videos. Police found two cell phones in the purse of Mosby's wife, one of which had the word "Vortex" on its back and had a phone number that matched the phone number on the bottles of medication prescribed to defendant (hereafter the Vortex phone). When a detective powered on the Vortex phone, a picture of defendant appeared on the home screen, and when the detective called the number associated with the phone, he heard a voicemail message in Spanish mentioning defendant's name.

Defendant was arrested and charged by felony complaint in case number 16NF011711 (hereafter the 16NF case) with armed robbery and false

3

imprisonment.[3] Shortly after defendant's arrest, San Mateo County Superior Court Judge Jeffrey R. Finigan signed a search warrant for the Vortex phone's records in the possession of the T-Mobile cell phone company, including the phone's location data in the weeks surrounding the bank robbery (hereafter the Finigan warrant). The return on the Finigan warrant eventually disclosed that the police were unable to do a physical download of the Vortex phone's contents, but they were able to obtain T-Mobile records containing location data for the phone.

In May 2017, defendant moved to suppress and to traverse/quash the Finigan warrant. Hearings were held in August and September 2017. Judge Finigan found that although he had previously signed the warrant, he now realized the supporting affidavit did not state sufficient probable cause against defendant, and he rejected as inapplicable the good faith exception to the exclusionary rule (see *United States v. Leon* (1984) 468 U.S. 897). Accordingly, Judge Finigan quashed the Finigan warrant for lack of probable cause against defendant. However, he ruled that the seizure of the Vortex phone at the time of defendant's arrest was appropriate because the officers knew defendant was subject to a probation search condition.

Shortly after Judge Finigan's ruling, law enforcement executed a second warrant affidavit to obtain the T-Mobile location data for the Vortex phone. On September 13, 2017, San Mateo County Superior Court Judge Robert D. Foiles signed the warrant (hereafter the Foiles warrant).

---

[3] Only a limited number of filings from the 16NF case appear in the record before us. For most of the procedural background on the 16NF case, the parties rely on assertions made by the People in one of their filings in the 17NF case. As there appears to be no dispute regarding these facts, we will do likewise.

4

The following day, the parties appeared before the Honorable Clifford V. Cretan for continued jury trial proceedings. Although not in the record before us, both the People and the defense apparently filed motions regarding the admissibility of the location data evidence. Defendant contended the People were bound by Judge Finigan's prior suppression ruling, while the prosecutor argued the evidence was admissible because it was independently obtained pursuant to the Foiles warrant. For reasons discussed more fully below, Judge Cretan agreed with the defense and ruled that the location data evidence could not be used at trial (hereafter the 9/14/17 ruling).

In October 2017, data was successfully extracted from the Vortex phone. A photograph found on the phone, created at 11:24 p.m. on September 15, 2016 (the date of the bank robbery), depicted a hand holding a large sum of currency. The downloaded data also included an outgoing chat message dated September 15, 2016, stating: " 'Kelly, come over here. I got a room, and I got money. Wherever you want, I'll pay you.' " Another message on the same date at 11:32 p.m. included a photograph of cash in various denominations and read, " 'This is what I got.' "

The People moved to sever defendant's case in light of the new evidence recovered from the Vortex phone, but the motion was denied. Accordingly, the People dismissed the 16NF case against defendant and immediately filed a new case. In the new proceeding, case number 17NF012699 (hereafter the 17NF case), the district attorney filed an amended information charging defendant with four counts of second degree robbery (§ 212.5, subd. (c)) and five counts of false imprisonment by violence (§ 236), with personal firearm

5

use enhancements as to each count (§§ 12022.5, subd. (a), 12022.53, subd. (b)).[4]

Before trial in the 17NF case, defendant filed a motion in limine to "exclude any reference to the cellular location data [that] was previously suppressed pursuant to Penal Code section 1538.5 and was excluded by this court at the previous trial." In opposition, the People argued that the location data evidence had been suppressed only once by Judge Finigan, and that the People had then obtained a new warrant from Judge Foiles, which had not been challenged or quashed and thereby served as a valid independent source for the location data evidence.

At the June 19, 2018, hearing on the motion before Judge Cretan, defense counsel argued that because Judge Finigan quashed the Finigan warrant and Judge Cretan's 9/14/17 ruling held the location data evidence would be inadmissible at trial in the 16NF case, the prosecution was barred under section 1538.5, subdivisions (j) and (p), from a third attempt to justify the seizure of the location data evidence based on the Foiles warrant.

Judge Cretan disagreed, finding that his 9/14/17 ruling was not "suppressing the evidence, rather I believe I was simply excluding it from being used in that proceeding in deference to Judge Finigan's ruling under 1538.5(d). [¶] This is a different proceeding at this time. The vehicle that gives rise to the records being obtained is Judge Foiles' warrant, not Judge Finigan's. At this point Judge Foiles' warrant stands. At this point, I don't believe that I've ever made any ruling on the merits of this issue. . . . I believe (d) spoke to the fact that the evidence should not be allowed in that proceeding in part because of the ruling by Judge Finigan, but also one of the

---

[4] Thereafter, the People successfully moved to consolidate defendant's 17NF case with Taylor's case.

6

consideration[s], which is on the record, was the timing of everything and the fairness to the defense, which they've announced ready for trial under certain assumptions and the assumptions were changing. So all that being said, I don't believe . . . there's any basis for excluding the evidence in this proceeding." Accordingly, Judge Cretan denied the defense's motion and ruled that "[t]he T-Mobile records may be admitted pursuant to the Judge Foiles warrant" (hereafter the 6/19/18 ruling).

Records for the Vortex phone and the phones of the other defendants disclosed numerous calls between them on September 15, 2016, as follows: all four phones used the same tower in Vallejo between 9:36 a.m. to 9:49 a.m.; all four phones traveled from the Vallejo area to Daly City between 10:00 a.m. to 11:33 a.m.; all four phones utilized towers in the vicinity of the Daly City First National Bank between 12:05 p.m. to 12:22 p.m.; and all four phones returned to the Vallejo area between 12:23 p.m. and 1:20 p.m. The records further showed that defendant communicated with Mosby and Wilson about 20 minutes before the robbery using a tower in Daly City. For the time period covered by the call records (September 1–22, 2016), the date of the robbery was the only day that the four phones used a tower in Daly City.[5]

The jury found defendant guilty on all nine counts and found the firearm use enhancement allegations to be true. The trial court sentenced defendant to 16 years in prison.

---

[5]     Additionally, Mosby's phone contained text messages to Wilson stating, " 'Hope you be here real early so we can get that money,' with a money sign" and " 'Lil Bra now the best time to do the job is in the morning when they open up but we can get'—money sign—'between morning and noon so let's do this shit and get it out of the way hit me when you get a chance one love.' " Mosby's phone also contained a text conversation with defendant that began the day before the bank robbery and continued until the next morning, ending at 8:55 a.m.

7

Defendant appealed.

DISCUSSION

## A. Governing Law and Standard of Review

We begin with an overview of the relevant portions of section 1538.5, the statute governing motions to suppress evidence obtained by search or seizure. (*People v. Williams* (1999) 20 Cal.4th 119, 127.)

Subdivision (a)(1) of section 1538.5[6] defines a motion to "suppress evidence" as one being made on any of the following grounds: "(A) The search or seizure without a warrant was unreasonable. [¶] (B) The search or seizure with a warrant was unreasonable because any of the following apply: [¶] (i) The warrant is insufficient on its face. [¶] (ii) The property or evidence obtained is not described in the warrant. [¶] (iii) There was not probable cause for the issuance of the warrant. [¶] (iv) The method of execution of the warrant violated federal or state constitutional standards. [¶] (v) There was any other violation of federal or state constitutional standards." Thus, section 1538.5 defines a motion to suppress evidence as one that challenges the reasonableness of a search or seizure on federal or state constitutional grounds and/or the validity or execution of a warrant.

Subdivision (d) provides, in relevant part: "If a search and seizure motion is granted pursuant to the proceedings authorized by this section, the property or evidence shall not be admissible against the movant at any trial or other hearing unless further proceedings authorized by this section, Section 871.5, 1238, or 1466 are utilized by the people."[7]

---

[6] All subdivision references are to subdivisions of section 1538.5 unless specified otherwise.

[7] Briefly, section 871.5 provides for review by motion of a magistrate's order dismissing a charge against a defendant, while sections 1238 and 1466

Subdivision (j) provides various "avenues of relief" to the prosecution when a motion to suppress has been granted, depending on whether the ruling was made at the preliminary hearing or at a special hearing of the superior court. (*People v. Jackson* (2002) 96 Cal.App.4th 1265, 1269 (*Jackson*).) As relevant here, "[i]f the defendant's motion is granted at a special hearing, the people, if they have additional evidence relating to the motion and not presented at the special hearing, shall have the right to show good cause at the trial why the evidence was not presented at the special hearing and why the prior ruling at the special hearing should not be binding, or the people may seek appellate review as provided in subdivision (o), unless the court, prior to the time the review is sought, has dismissed the case pursuant to Section 1385. *If the case has been dismissed* pursuant to Section 1385, either *on* the court's own motion or *the motion of the people after the special hearing*, the people may file a new complaint or seek an indictment after the special hearing, and *the ruling at the special hearing shall not be binding in any subsequent proceeding, except as limited by subdivision (p).*" (§ 1538.5, subd. (j), italics added.)

Subdivision (p) imposes two limitations on the relitigation of a motion to suppress evidence under subdivision (j). First, "[i]f a defendant's motion to . . . suppress evidence in a felony matter has been granted twice, the people may not file a new complaint or seek an indictment in order to relitigate the motion or relitigate the matter de novo at a special hearing as otherwise provided by subdivision (j), unless the people discover additional evidence relating to the motion that was not reasonably discoverable at the time of the second suppression hearing." Second, "[r]elitigation of the motion shall be

---

provide for appeals by the People from various enumerated orders, including dismissal orders.

9

heard by the same judge who granted the motion at the first hearing if the judge is available."

Reading the subdivisions together, subdivision (d) makes previously suppressed evidence inadmissible against a defendant in any subsequent trial or hearing unless the People utilize the measures authorized by section 1538.5—including the various "avenues of relief" outlined in subdivision (j) (*Jackson, supra,* 96 Cal.App.4th at p. 1269)—subject to the limitations of subdivision (p). For our purposes, these subdivisions can fairly be summarized as providing the People with "two bites at the apple" to successfully justify a challenged search or seizure in order for the evidence obtained therefrom to be admitted at trial.

Generally, on review from a trial court's ruling on a motion to suppress, we apply the substantial evidence standard to the court's findings of historical fact, while independently reviewing the court's selection of the applicable rule of law and application of the law to the facts. (*People v. Ayala* (2000) 24 Cal.4th 243, 279.) The instant matter raises a purely legal question: did the People suffer two adverse suppression rulings as to the location data evidence before the evidence was admitted in the 17NF case?

The People contend we must defer to Judge Cretan's later characterizations of his 9/14/17 ruling as findings of historical fact. We disagree. Although we find Judge Cretan's remarks helpful, they were not factual findings entitled to deference, but explanations of his reasoning. We consider the correctness of Judge Cretan's 6/19/18 ruling, not the correctness of his reasons for reaching it. (*People v. Suarez* (2020) 10 Cal.5th 116, 151; see *Environmental Protection Information Center v. Department of Forestry & Fire Protection* (2010) 190 Cal.App.4th 217, 230 [no deference to trial court's reasons to evaluate legal effect of its decision].) On this score, we emphasize

10

that we are not called upon to determine the propriety of Judge Cretan's 9/14/17 ruling holding the location data evidence inadmissible at trial in the 16NF case. What matters for our purposes is the legal effect of that ruling—in particular, whether it caused the prosecution to suffer an adverse suppression ruling for purposes of subdivisions (j) and (p).

**B. Analysis**

There is no dispute that Judge Finigan's quashing of the warrant he approved caused the People to suffer one adverse suppression ruling for purposes of subdivisions (j) and (p). The People, however, contend the 9/14/17 ruling by Judge Cretan did not constitute a suppression ruling under those subdivisions because it "was [a] procedural, not substantive" decision under subdivision (d) in which Judge Cretan simply ruled that the location data evidence would be inadmissible pursuant to Judge Finigan's earlier decision to quash the warrant he had approved. Defendant rejects this distinction and argues that the prosecution clearly received two opportunities to justify the seizure of the same location data evidence and failed both times. As we shall explain, we believe the People have the better argument.

The 9/14/17 ruling was in response to the parties' pretrial motions in the 16NF case. While the motion papers are not in the record before us, we can discern their nature from the arguments and remarks made at the September 14, 2017, hearing. (See *Lennar Homes of California, Inc. v. Stephens* (2014) 232 Cal.App.4th 673, 681–682 [looking to substance of motion and relief sought to determine nature of motion].) Defense counsel argued that because Judge Finigan had already suppressed the location data evidence, "this is the law of the case. We had this ruling on August 31st from Judge Finigan. . . . And 1538.5(d) says the only avenue of recourse is what's listed in the statute, not to ask what I believe they're asking you to do, which

11

is revisit Judge Finigan's prior ruling. They are bound by Judge Finigan's prior ruling[.]"

Additionally, defense counsel remarked that had he known the prosecution was " 'gonna try to revisit this in front of Judge Cretan,' " it would have "affected [his] readiness" for trial. Counsel argued that if the trial court were to deny the defense's motion under subdivision (d), he would still "have the ability to argue that the second warrant was invalid and that the evidence was not admissible[,]" though he could not "find any authority for filing two motions to suppress in the same case nor can I find any authority to file a second motion to suppress the same evidence. And I think that's because the plain language of the statute says that that evidence is inadmissible in any trial or hearing. And that comports with the lack of authority for [the prosecutor's] position, that she's found no case that says evidence that was obtained by an invalid warrant is admissible under any exception. And I know she's done an exhaustive search. And so what I'm asking the Court to do is simply rule based on Judge Finigan's ruling. There's no need to revisit it, that 1538.5(d) says it's not admissible[.]"

The prosecutor conceded that the Finigan warrant was defective but argued, "we're not introducing the evidence from that defective warrant, but there's nothing that precludes us from introducing evidence pursuant to a lawful warrant, which was just signed[.]" "What we're seeking to introduce . . . Judge Foiles signed a new warrant yesterday afternoon, and we're working on getting the T-Mobile records, hopefully, today. If their 1524[8] says that there's an independent—law enforcement is allowed to seek a warrant where there is—probable cause exists to believe that there's

---

[8]    By "1524," the prosecutor was presumably referring to an affidavit submitted in support of the search warrant application under section 1524.

evidence of a felony. [¶] . . . But there's nothing preventing law enforcement, if they have independent probable cause, to write another warrant if they think there's evidence of a crime. . . . And that is what the whole independent source doctrine stands for." Expressing some skepticism of the prosecutor's position, Judge Cretan remarked that if the prosecutor were correct, then "anytime [the] court suppresses" evidence, the prosecution could "go back and say let's write a better warrant. . . [¶] . . . [¶] . . . Forty years of doing this, I don't know that I've ever seen this point come up."

In granting defendant's motion, Judge Cretan expressly noted that section "1538.5(d) is very specific . . . in saying that the evidence shall not be admissible in this trial . . . unless People do pursuant to [sections] 871.5, 1238 or 1446, that's a pretty clear statement. . . . And nothing that [the prosecutor] has been able to find is precisely on point to show that you can cure it by going out and getting a better warrant. If that was acceptable, I think there would be something in the form of opinions. . . . I'm gonna grant [defense counsel's] motion pursuant to the reasoning of 1538.5(d). . . . So regardless of whether . . . the warrant signed by Judge Foiles is a valid warrant. I'll presume, for the sake of this discussion, that it probably was a sufficient warrant. Nonetheless, I think the evidence cannot be used in this [16NF case], so that's the ruling on [defense counsel's] Motion No. 1."

From the above, it is apparent that defendant's motion in the 16NF case was based on subdivision (d) and his undisputed contention that the prosecution had failed to use procedures authorized under section 1538.5 to avoid the binding effect of Judge Finigan's prior suppression ruling. And notably, the trial court did not rule on the reasonableness of the Vortex phone search under either the Finigan warrant or the Foiles warrant.

13

The wrinkle here is that the prosecution, in attempting to counter defendant's procedural argument under subdivision (d), sought a substantive ruling on the validity of the Foiles warrant under the independent source doctrine.[9] However, the two-adjudication allowance of subdivisions (j) and (p) is based on the granting of a defendant's suppression motions. (See § 1538.5, subd. (p) ["If a defendant's motion . . . has been granted twice"].) Thus, while the prosecution attempted to avoid the effect of Judge Finigan's suppression ruling by pointing to the Foiles warrant, the record discloses no evaluation by Judge Cretan regarding the sufficiency of the affidavit of probable cause supporting the Foiles warrant, or any determination that the obtaining of the location data evidence via the Foiles warrant was genuinely independent of any prior constitutional violation. Instead, Judge Cretan "presume[d], for the sake of this discussion" that the Foiles warrant was valid but nevertheless refused to admit the location data evidence in trial of the 16NF case based on defendant's argument that the People failed to seek relief from Judge Finigan's suppression ruling through any of the measures authorized by subdivision (d). Thus, the 9/14/17 ruling was neither a decision premised on a reexamination of the Finigan warrant nor a merits determination as to the validity of the Foiles warrant.[10]

---

[9] Under this doctrine, where a criminal investigation involves some illegal conduct, courts may admit evidence derived by means wholly independent of any constitutional violation. (*People v. Tousant* (2021) 64 Cal.App.5th 804, 818.)

[10] We express no opinion on the validity of the Foiles warrant or the viability of the prosecution's theory under the independent source doctrine. While the People have briefed these issues, they are unnecessary to our decision. Moreover, and in any event, the record does not include the affidavits in support of the Finigan and Foiles warrants and is therefore inadequate for resolution of the issues.

In short, the 9/14/17 ruling did not cause the People to suffer a second adverse suppression ruling for purposes of subdivisions (j) and (p). Our conclusion is rooted in our objective to ascertain and effectuate the Legislature's intent in enacting these provisions. (*People v. Woodhead* (1987) 43 Cal.3d 1002, 1007.) In determining that intent we "look first to the words themselves. [Citations.] When the language is clear and unambiguous, there is no need for construction. [Citations.] When the language is susceptible of more than one reasonable interpretation, however, we look to a variety of extrinsic aids, including the ostensible objects to the achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." (*Id.* at pp. 1007–1008.)

As defined in subdivision (a)(1), the granting of a suppression motion does not include a trial court's refusal to admit evidence due to the prosecution's failure to utilize procedures authorized under subdivision (d). Specifically, such a decision does not address any of the grounds identified in subdivision (a)(1) for a motion to suppress, e.g., the reasonableness of the search or seizure under federal or state constitutional standards and/or the validity or execution of the warrant. As discussed, there appears no dispute that the People failed to use any of the procedures authorized under subdivision (d) to avoid the binding effect of the defective Finigan warrant, and Judge Cretan evidently agreed with defendant that the People's failure to do so precluded admission of the location data evidence obtained pursuant to that warrant. Significantly, however, Judge Cretan did not revisit the merits of Judge Finigan's prior ruling; nor did he make a merits determination on the validity of the Foiles warrant. Thus, he did not grant a

second suppression motion as that term is substantively defined under subdivision (a)(1).

The legislative history of the 1993 amendments to section 1538.5 points to the same conclusion. In 1993, the Legislature modified subdivision (j) and added subdivision (p) in response to the Supreme Court's decision in *Schlick v. Superior Court* (1992) 4 Cal.4th 310, which interpreted subdivision (d) as "precluding the prosecution from relitigating a suppression motion that the superior court had granted in a felony matter." (*People v. Superior Court (Jimenez)* (2002) 28 Cal.4th 798, 801, 805–807 (*Jimenez*).) In sponsoring the Senate bill providing for the amendments, the Los Angeles County District Attorney " 'indicated that " 'superior court calendars are crowded. Deputy district attorneys must juggle many cases each day. . . .' [¶] . . . Often, the [motion to suppress evidence] is dispositive of a case. If it is granted, the case must be dismissed. If it is denied, the defendant will plead guilty or in all likelihood be found guilty if brought to trial. The [Los Angeles District Attorney] believes that 'it is unfair to the prosecution . . . for a criminal defendant whose culpability for a serious felony may be beyond question to 'beat the rap' simply because an overworked prosecutor at one pretrial hearing was unable to present the People's evidence in the most effective manner. The ability to refile and relitigate the suppression motion . . . will largely overcome this without compr[om]ising any constitutional right of the defendant. . . .' " ' " (*Jimenez*, at pp. 806–807.)

In sum, the relevant portions of subdivisions (j) and (p) were intended to give prosecutors a second opportunity to "present the People's evidence in the most effective manner" to justify a search or seizure, notwithstanding a prior unsuccessful attempt. (*Jimenez, supra*, 28 Cal.4th at p. 807.) This means that the two-adjudication limit of subdivisions (j) and (p) applies

16

where the trial court, in response to a defense motion to suppress evidence, has twice determined that a warrantless search was unreasonable or that a search with a warrant was unreasonable due to the warrant's defective nature or execution.  Here, the record is reasonably clear that the 9/14/17 ruling barring admission of the location data evidence at trial was not a second ruling that the police search of the Vortex phone was unreasonable because it was based on a defective warrant.  Indeed, the record shows that the People were not attempting to relitigate the validity of the Finigan warrant and that Judge Cretan did not consider the evidence supporting the Foiles warrant in making his 9/14/17 ruling.  Thus, it cannot be said that the People failed a second time in establishing the reasonableness of the search of the Votex phone and seizure of the location data records.  Accordingly, the 9/14/17 ruling did not cause the People to suffer a second adverse suppression ruling within the meaning and intent of subdivisions (j) and (p).

Our conclusion is reinforced by the circumstance that the 9/14/17 ruling was apparently based on fairness concerns due to the prosecution's eleventh-hour attempt to admit the location data evidence at trial in the 16NF case.  As recounted above, Judge Cretan remarked at the June 19, 2018, hearing in the 17NF case that his 9/14/17 ruling had taken into consideration "the timing of everything and the fairness to the defense, which they've announced ready for trial under certain assumptions and the assumptions were changing."  The record reasonably supports this conclusion, as defense counsel specifically argued at the September 14, 2017, hearing that the People's attempt to circumvent Judge Finigan's ruling negatively impacted counsel's readiness for trial.  Accordingly, the 9/14/17 ruling that precluded admission of the location evidence at trial in the 16NF case—based on defendant's arguments under subdivision (d) and fairness concerns over the

timing of the admission of the evidence—was not an adverse suppression ruling against the prosecution for purposes of subdivisions (j) and (p).

For all of these reasons, we conclude the prosecution did not suffer two adverse suppression rulings as to the location data evidence in the 16NF case within the meaning of subdivisions (a)(1), (j), and (p), so as to bar admission of the evidence in the 17NF case.

## DISPOSITION

The judgment is affirmed.

_____

Fujisaki, Acting P. J.

WE CONCUR:


_____

Petrou, J.


_____

Rodrìguez, J.


A156420